## CHARLES DEWEY, INSPECTOR OF FINANCE, v. THE ST. ALBANS TRUST COMPANY.

### [In Chancery.]

*Insolvent Trust Company. Liability of Stockholder.*

The charter of the St. Albans Trust Company provided : " If at any time the capital stock paid into said corporation shall be impaired by losses or otherwise, the directors shall forthwith repair the same by assessment." The trust company being insolvent and under the control of a receiver ; *Held,* that a personal liability is not imposed upon the stockholders, and that they cannot be assessed for the purpose of paying the creditors ; and that the purpose of said provision was rather to prevent the continuance of business with impaired capital.*

PETITION by the receiver of the St. Albans Trust Company. The petition was addressed to the Court of Chancery, was filed July 29, 1884, and heard by Chancellor ROYCE, October 25, 1884. The cause was heard on the petition, the several answers of the National Life Insurance Company and of C. W. Witters, assignee of Lawrence Brainerd, and oral proofs. Petition dismissed. See *Dewey* v. *The St. Albans Trust Co.* 56 Vt. 476.

*Daniel Roberts,* for the receiver, C. W. Rich.

Sec. 20 of the charter means that the directors shall repair the loss of capital by laying an assessment, or making a requisition, not upon themselves or strangers, but upon the several stockholders, that they pay into the corporation *pro rata,* according to and upon the number of shares they own, such sum as may be necessary to repair the loss ; as, a certain percentage, or a certain number of dollars, upon

*The entire section of the charter was : " SEC. 20. If at any time the capital stock paid into said corporation shall be impaired by losses or otherwise, the directors shall forthwith repair the same by assessment ; and no dividends shall be made or declared upon the capital stock of said corporation until the same are actually earned and realized over and above all losses and expenses."

each share, not exceeding the par of the stock. *United States* v. *Knox*, 102 U. S. 422; Morse Bk. 503. The corporation had not lost its power to act as such—56 Vt. 476; and the impairment of the capital being apparent, the duty of the directors arose "forthwith to repair the same by assessment."

Their failing to do this, the right was in the creditors to apply to a court of equity by original bill that an assessment be laid. Mor. Corp. 575. The company, though not dissolved, is insolvent, and in the hands of a receiver appointed by the Court of Chancery. The court may act directly in ordering the levying and payment of the assessment, without the intervention of the directors, for, in view of the law, both directors and stockholders as integral parts of the corporation are before the court in all proceedings touching that body ; so much so, that it is not even necessary that process be served upon them in order to obtain jurisdiction of them, or of the question. *Sanger* v. *Upton*, 91 U. S. 56 ; *Scoville* v. *Thayer*, 105 U. S. 143.

The capital stock of a moneyed corporation is a trust fund available to creditors in the event of insolvency. Equally so is the unpaid subscriptions for stock. *Upton* v. *Tribilcock*, 91 U. S. 47.

The obligation by section 20 of the charter imposed upon the directors to repair loss of capital is equally an asset, or resource, to be used for the benefit of creditors. It is, as if incorporated into the terms of the subscription, that the subscribers shall not only make up the full capital subscribed, but shall maintain it in its integrity, each contributing his proper proportion. It is a "property that belongs to" the trust company which it is made the duty of the receiver to collect. R. L. 3550.

The liability of the National Life Insurance Company does not differ from that of the other stockholders. It was a stockholder in fact and appeared to be such on the records, without notice or indication that its title was other

than unconditional and absolute. As respects the trust company and its creditors, they are strangers to the undisclosed relations between the two Brainerds and the National Life Company. *Pullman* v. *Upton*, 96 U. S. 328; *National Bank* v. *Case*, 99 U. S. 628 ; Mor. Corp. s. 373, 600, 601, 602 ; *Adderley* v. *Storm*, 6 Hill, 624.

It is objected, that assessments might be made indefinitely, and for many times the amount of the stock, so long as any debts remained unpaid, the solvent stockholders being made answerable for the insolvent ones.

No such result is claimed, nor would this be reasonable. The liability is not that of partners ; the charter creates no such general liability, but it is limited to an "assessment," implying a *pro rata* apportionment and charge upon the stockholders according to their ownership of shares, and not exceeding the par of the shares. The subject matter determines this.

*Pitkin & Huse,* for the National Life Insurance Co.

I. The receiver is not entitled to any order for an assessment. Holders of paid up capital stock are not, nor is their stock, liable to assessment unless by express statutory provision, and such assessment can be made only for the purpose and upon the conditions expressly stated in the statute.

Neither by the general law nor by any provision of the trust company's charter are its stockholders personally liable to its present creditors ; and, this case showing that the capital stock was paid up, its stockholders are liable if at all only to assessment under said section 20.

The 20th section read by itself and according to the plain and natural import of its words, is not ambiguous. It looks towards future business only and was evidently inserted to prevent the corporation from continuing to do business with impaired capital.

II. Any order for an assessment should, if made, be limited to be upon and enforced against the stock only.

At common law paid up stock could not be assessed. The stock of the trust company was paid up and the case shows that the stockholders have not contracted or promised to pay anything upon it. The assessment is not asked for the purpose of collecting the purchase price of the stock or any part thereof, nor for calling in any part of the capital in the hands of stockholders for the corporation or its creditors. The liability sought to be enforced is purely statutory. As before stated there was when the charter was enacted and ever since has been a statute providing for the sale of stock for the non-payment of assessments upon it. R. L. ss. 3251, 3260, 3261 ; Laws of 1865, No. 22 ; G. S. c. 86, ss. 12, 2.

Here is then a liability created by statute which did not exist at common law and for which there was when it was created and ever since has been a statutory remedy. Such statutory remedy is exclusive. Sedg. Stat. Law, 93, 97, 401, 406; *Dauchy* v. *Brown*, 24 Vt. 197; *Windham Prov. Inst. of Savings* v. *Sprague*, 43 Vt. 502; *Newman* v. *Waite*, Ib. 587; *Brattleboro* v. *Waite*, 44 Vt. 459; *Thayer* v. *Partridge*, 47 Vt. 423; *Allen* v. *Walsh*, 25 Minn. 543; *Johnson* v. *Fischer*, 30 Minn. 173; *Coleman* v. *White*, 14 Wis. 700.

*Cross & Start*, for the National Life Insurance Co. and other stockholders.

This proceeding is analogous to a *mandamus*. The court cannot grant the relief asked, unless it be upon the ground that the provisions of sec. 20 are a subsisting security at all times for existing creditors.

If it is such security, the result would be to make the solvent stockholders personally and individually liable, not only for all debts of the company, but for the stock of their insolvent associates.

The making of the solvent stockholders jointly liable personally, for all the debts of the company, would be a repeal, by implication, of section 1 of the charter, which provides

that the subscribers to the stock and their successors and assigns shall be a *corporation* and *body politic*, one of the attributes of which is that the individual liability of 'its members is limited to the amount invested in the stock. Ang. Corp. ss. 41, 591.

The making of the solvent stockholders guarantors to all irresponsible stockholders of the ultimate par value of their shares, would be a repeal, by implication, of the whole charter and all law.

When an assessment is made under section 20, the only obligation imposed upon the individual stockholder is that arising from the fact that an assessment is made. There is no provision of law in the charter or elsewhere which creates any liability in the stockholder expressly to pay any such assessment. The law has, however, given a specific remedy for the enforcement of such assessment by a sale of the shares assessed by public auction, and it is submitted that such remedy is the only remedy. *Conn. & Pass. R. R. R. Co.* v. *Bailey*, 24 Vt. 479: *Dauchy* v. *Brown*, 24 Vt. 197; *Windham Prov. Ins. of Savings* v. *Sprague*, 43 Vt. 502; *Essex Bridge Co.* v. *Tuttle*, 2 Vt. 399.

The opinion of the court was delivered by

ROWELL, J. This is a petition in said cause by the receiver of said company, setting forth that debts to the amount of $580,000 have been proved and allowed against said company, and a dividend of twenty per cent ordered to be paid thereon, and that the same has been paid to the extent of the funds in his hands; that there is not enough property and assets of said company remaining that can be collected and made available to satisfy the residue of said debts into more than $100,000—the amount of the chartered capital stock of said company, so that, before and at the time the petitioner was appointed receiver, said capital stock had become, and was and now is, impaired by losses and otherwise to the full amount thereof; that therefore it be-

came and now is the duty of the directors of said company to forthwith repair the same by assessment thereon and on the holders thereof, but that they have neglected and refused so to do, or in any other way to make good such loss, although specially thereunto requested by the petitioner; and praying the court to order such assessment to be laid, and paid to the petitioner or into court, for the purpose of enabling the petitioner to pay the residue of said debts.

The facts found and certified up sustain the allegations of the petition, and show that the company stopped business on August 6, 1883, and has done no corporate act since.

Section 20 of the charter of said company—St. 1868, No. 157—provides that "if at any time the capital stock paid into said corporation shall be impaired by losses or otherwise, the directors shall forthwith repair the same by assessment."

It is contended on behalf of the petitioner, that by force of this provision, the stockholders are bound to the creditors of said company to contribute to the amount of their capital stock towards the payment of the debts of the company, the assets of the company being insufficient; that the obligation thereby imposed is an asset, to be used for the benefit of creditors; that the case stands as it would if it had been incorporated into the stock subscription, that the subscribers would not only make up the full capital subscribed, but would maintain it in its integrity, each contributing his just proportion. In other words, it is contended that said provision imposes a personal liability on the stockholders for the debts of the company, and obliges them to keep the capital stock of the company at all times unimpaired for the benefit of existing creditors.

But we are unable to adopt this view. No such liability exists at common law; and we must suppose that if the mind of the Legislature was specially drawn to the subject of departing from the common law in this respect, and conceived a purpose to make the stockholders thus liable, such

purpose would have been indicated with some distinctness, and the language used, fairly adequate to express with reasonable certainty the real sense intended by the Legislature. But the language of the provision before us, taken in connection with the whole act, is not fairly adequate to express an intention to impose personal liability on the stockholders; nor yet to impose on them the obligation of keeping the capital stock unimpaired for the benefit of existing creditors; but it looks rather to a continuance of business by the company, and was intended to prevent such continuance with an impaired capital: and it was adequate to that intent, for if the company undertook to continue business without repairing an impaired capital, the general law, to which its charter made the company subject, made it the duty of the bank commissioner to apply to the Court of Chancery for an injunction against the company and the appointment of a receiver—Gen. Sts. c. 86, ss. 31, 32; and the St. of 1874, No. 87, s. 5, conferred on the inspector of finance in the inspection and examination of savings banks and trust companies, all and singular, the powers that were conferred on the bank commissioner by c. 86 of the Gen. Sts.; and by s. 3601, R. L., the provisions of law applicable to banking associations were made applicable to insolvent trust companies, except as to application of assets. Although the ancient rule, that statutes in derogation of the common law are to be strictly construed, has been considerably relaxed in modern times, if indeed it now has any solid foundation in our jurisprudence, yet it should ever be remembered that the rules of the common law are not to be changed by doubtful implication, nor overturned except by clear and unambiguous language.

The duty to repair capital rested on the directors, if they desired to continue business, whether the company was insolvent in fact or not. Suppose the assets to be $150,000 only, and the debts $100,000; the capital is impaired one half. Or suppose the assets and the debts to be just equal;

the capital is all gone. But in neither case could creditors interpose to compel the capital to be repaired, for they would have no interest in the matter, as the assets are sufficient to pay the debts ; and yet, the duty to repair the capital would not be discharged, but would continue notwithstanding. This shows that the purpose of repairing capital is, not to provide means wherewith to pay the debts of a defunct institution, but rather to afford an earnest for the further prosecution of business.

The petitioner contends for an assessment to the amount of the par value of the stock only, and concedes that he can ask no more. But this very concession shows the reed on which he leans ; for if an assessment can be made at all, no reason can be given for stopping short of assessing enough to pay all the debts in full, which would take many times the amount of the stock.

Note the explicitness with which the Federal statute has imposed liability on shareholders of national banking associations. They "shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof." R. S. s. 5151. Again: "Persons holding stock as executors, administrators, guardians, or trustees, shall not be personally subject to any liability as stockholders," but the estate in their hands is liable instead. Sec. 5152. How unlike the provisions of the statute under consideration. Indeed, it is scarcely conceivable that the Legislature intended to impose the liability here contended for, and yet came so far short of using language adequate to that end.

Petition dismissed with costs.