HULITT v. BELL et al.

(Circuit Court, S. D. Ohio, W. D. February 7, 1898.)

No. 5,003.

1. NATIONAL BANKS—IMPAIRMENT OF CAPITAL—ASSESSMENT OF STOCK.
   On notice from the comptroller, under Rev. St. § 5205, that the bank's capital is impaired so as to require an assessment on the stockholders, such assessment is to be made by the stockholders themselves, and an assessment by the directors is void.

2. SAME—ENFORCEMENT OF ASSESSMENT.
   An assessment to restore impaired capital, under Rev. St. § 5205, is only enforceable by subjecting the stock of persons refusing to pay, and no action will lie against the stockholders personally.

This was a suit in equity by John Hulitt, as receiver of the First National Bank of Hillsboro, Ohio, against Charles E. Bell and others, to recover an assessment upon the shareholders, under Rev. St. § 5205.

Harlan Cleveland and Huggins & Watts, for complainant.

Geo. L. Garrett, Steele & Sams, and John W. Hook, for respondents.

SAGE, District Judge. This cause is before the court on general demurrer. The material averments of the bill are as follows: The First National Bank of Hillsboro, Ohio, is a national banking association. On April 25, 1896, the comptroller of the currency, in pursuance of section 5205 of the Revised Statutes of the United States, notified the bank that its capital stock had become impaired to an extent that made necessary an assessment of $50,000 upon its shareholders. On the 27th of April, 1896, the directors, by resolution duly entered upon the records of the bank, made an assessment of $50,000, in accordance with said notification. This resolution was made known to the stockholders. The capital stock of the bank was $100,000, in shares of $100 each, which had been fully paid up, but had become impaired 50 per cent. at the time of said notice by the comptroller of the currency. All the stockholders paid said assessment, excepting the defendants, who refused to pay the same. On the 16th of July, 1896, the bank suspended payment; and on the 28th of July, 1896, the complainant was appointed receiver of the bank by the comptroller of the currency. The bill avers that it will be necessary that all the shareholders of the bank pay said assessment in order to pay its debts, and in order that all its shareholders may bear equally the burdens imposed on them as shareholders. From the time when the complainant became the receiver, the shares of the bank have been valueless. It appears from the bill that the shareholders who have

paid the assessment were the holders of 545 shares, and the shareholders who failed and refused to pay were the holders of 455 shares.

Counsel for defendants present the two following objections: First. The assessment is invalid because made by the directors without consultation with the shareholders, and not made by the shareholders themselves. They call attention to the fact that no misconduct is charged against any of the defendants as stockholders; that it is not averred that any dividends were paid out of the capital, or that any were paid at all. They urge that, for anything that appears, the losses may all have resulted from errors of judgment or bad investments, and without the knowledge of the stockholders; that the duty of the comptroller is limited in the first instance to a determination of the fact that the capital stock of the bank has become impaired by losses or otherwise, and then to a service of notice of such fact upon the association. They contend that no legal obligation on the part of individual shareholders to pay a proportionate part of the deficiency is or can be created by the comptroller's notice to the association without further action upon its part, and that to hold that the assessment may be levied and enforced by the directors without consultation with the shareholders is to disregard the language of the statute, and to ignore the rights of the shareholders altogether. They claim that the language of the statute implies an election on the part of the association as to the course it will adopt, and that this involves deliberation and the exercise of judgment on their part. My conclusion is that this claim is well founded, and that it is essential to the validity of the assessment that it be made by the stockholders. The notice under section 5205 must be to the association, and the provision that if the association "shall fail to pay up its capital stock, and shall refuse to go into liquidation, as provided by law, for three months after receiving notice from the comptroller, a receiver may be appointed to close up the business of the association, according to the provisions of section 5234," indicates that the alternative is presented to the association to replenish the capital and go on, or to decline to replenish and have the business of the bank closed up. This is a matter not within the scope of the business of the bank, which is to be transacted by the directors. Under section 5136 power is given to the association to elect or appoint directors, and to define their duties; to prescribe, by its board of directors, by-laws not inconsistent with law regulating the manner in which its stock shall be transferred, "its directors elected or appointed, its officers appointed, its property transferred, its general business conducted, and the privileges granted to it by law exercised and enjoyed." It does not appear from the bill that any by-laws were prescribed. The association is authorized, under the seventh paragraph of section 5136, "to exercise by its board of directors, or duly-authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by buying and selling exchange, coin and bullion; by loaning money on personal security; and by obtaining, issuing, and circulating notes" according to the provision of the statute.

The assessment in question does not fall within any of these powers. It does not come under the head of incidental powers necessary to carry on the business, nor is it included in the conduct of general business. It is a provision for a special emergency, so unusual and of such importance as to make it necessary for the association to consider and determine whether it will continue in business or wind up its affairs. The impairment of the capital may have resulted from the inefficiency or incapacity or the fault or wrong of the directors under whose administration of the affairs of the bank it occurred. Their holdings of the capital stock may be but a small proportion of the entire amount. They ought not to exercise control over a matter so vital, unless the statute gives it to them in unmistakable terms. No direct authority has been cited. In Delano v. Butler, 118 U. S. 634, 7 Sup. Ct. 39, the comptroller called upon the bank for an assessment of 100 per cent., under section 5205. The shareholders at their annual meeting voted to levy the assessment. The validity of the assessment was not in issue. The question was whether the payments made upon it could be applied in discharge of subsequent assessments made by the comptroller in the final liquidation of the bank. Mr. Justice Matthews, who delivered the opinion of the court, in referring, on page 653, 118 U. S., and page 46, 7 Sup. Ct., to the assessment, said:

"The assessment imposed upon the stockholders by their own vote, for the purpose of restoring their lost capital, as a consideration for the privilege of continuing business, and to avoid liquidation under section 5205 of the Revised Statutes, is not the assessment contemplated by section 5151, by which the shareholders of every national banking association may be compelled to discharge their individual responsibility for the contracts, debts, and engagements of the association. The assessment as made under section 5205 is voluntary, made by the stockholders themselves, paid into the general funds of the bank as a further investment of the capital stock, and disposed of by its officers in the ordinary course of its business. It may or may not be applied by them to the payment of creditors, and, in the ordinary course of business, certainly would not be applied, as in cases of liquidation, to the payment of creditors ratably; whereas, under section 5151, the individual liability does not arise, except in case of liquidation, and for the purpose of winding up the affairs of the bank. The assessment under that section is made by authority of the comptroller of the currency, is not voluntary, and can be applied only to the satisfaction of the creditors equally and ratably."

The first proposition stated by counsel for the complainant, that "the capital stock of a bank, particularly of an insolvent bank, is a trust fund for its creditors," and the second proposition, that "creditors of national banks are protected by express provision of the national bank act from any impairment of the trust fund for them,"—that is, of the capital stock,—are undoubtedly correct. Section 5205 was enacted to prevent any loss to creditors by reason of the impairment of the capital stock. But the question here is whether the assessments in this case were legally levied, and whether these defendants became, by reason thereof, debtors to the bank. If not, the assessments added nothing to the trust fund. The propositions therefore submitted by counsel for the complainant do not solve the difficulty with which they are confronted. The remarks of Justice Matthews quoted above are not authoritative, because they were not necessary to the decision of the case, but they are persuasive. The view by

him expressed does not in any degree tend to impair the rights of creditors, nor to lessen the liability of shareholders.

Section 5205 has relation to a case where the payment of the deficiency in the capital stock would enable the association to go on in business, and the remedy for failure to make payment of the assessment is ample. It is to be found in the provision that if any shareholder or shareholders shall neglect or refuse, after three months' notice, to pay the assessments as provided in the section, the directors shall cause a sufficient amount of the capital stock of such shareholder or shareholders to be sold at public auction to make good the deficiency, and the balance, if any, is to be returned to the delinquent shareholder. In any case where the property and assets of the bank are insufficient to pay its debts, an assessment can be levied under section 5151 on each stockholder to the extent of the amount of his stock at the par value thereof. That assessment, as was pointed out by Justice Matthews in Delano v. Butler, is made by authority of the comptroller of the currency, is not voluntary, and is applicable only to the satisfaction of the claims of creditors. Upon authority of Dewey v. Trust Co., 57 Vt. 332, it may well be doubted whether the assessments provided for in section 5205 could be levied for the purpose of paying creditors. The charter of the trust company did not impose personal liability on the stockholders for the debts of the company, but it contained a provision that, if at any time the capital stock should be impaired by losses or otherwise, the directors should forthwith repair the same by assessments. The court held that the stockholders could not be assessed for the purpose of paying creditors, and that the provision referred to looked rather to a continuance by the company, and was intended to prevent a continuance with an impaired capital. The court negatived the contention on behalf of the plaintiff, who was the receiver of the company, that, by force of the provision, the stockholders were bound to the creditors of the company to contribute to the amount of their capital stock towards the payment of the debts, the assets of the company being insufficient.

Second. Even admitting that the assessment was legally made, it is claimed for the defendants that it cannot be enforced by action at law or in equity, for the reason that, where a statute which gives a new right or creates a new obligation also provides a remedy, the remedy so provided is exclusive. In City of Boston v. Shaw, 1 Metc. (Mass.) 138, the action was in assumpsit to recover the amount of two assessments laid on the defendant for connecting his private drains with a public sewer made and owned by the complainant. There was also a count on a quantum meruit. The court held that the plaintiffs could not recover on the indebitatus count; that there was nothing in the case from which the law would imply a promise by the defendant to pay the plaintiffs for the benefit he might have received from the public sewer. The court said that his obligation to pay was imposed by statute or city ordinance, and not by common law, and that, "when a new power and also the means of executing it are given by statute, that power can be executed in no other way."

It was so held in Millar v. Taylor, 4 Burrows, 2303–2323. See, also, Lovelace v. Curry, 7 Term R. 631.

In Turnpike Corp. v. Gould, 6 Mass. 40, the supreme court of Massachusetts declared it a rule founded in sound reason—

"That when a statute gives a new power, and at the same time provides the means of executing it, those who claim the power can execute it in no other way. When we find a power in the plaintiffs to make the assessments, they can force the payment in the method directed by the statute, and not otherwise; and that method is by the sale of the delinquent's shares. This rule applies to all taxes, public and private, except in the particular cases in which an action is expressly given by the statute."

The assessment in that case was upon shares in a turnpike company. The court said that this rule of law was, in cases like that under consideration, reasonable.

"Persons not interested in having the turnpike, either from their situation or private property, may be requested to associate and become corporators. They may not be able to judge of the probable expenses or profits. But if they know that, if the assessments become grievous, they may abandon the enterprise by suffering their shares to be sold, they may, on this principle, join the association. And it may be observed that it must be presumed that the legislature considered the sale of the shares an adequate remedy to recover the assessments; for it is not to be supposed that corporate powers were applied for to subject the adventurers to a probable loss."

In that case the validity of the assessments was not in question. The litigation related exclusively to the remedy. The court very properly held that, if there had been an express promise on the part of any shareholder to pay the assessment, it might have been enforced by action. The rule laid down in these cases was followed in Glass Co. v. Dewey, 16 Mass. 94. That was another assessment case. It was a part of the original agreement under which the company was organized and afterwards incorporated that, if a further sum than was subscribed should be needed, the subscribers should be assessed in proportion to their subscription. It was held that the only remedy for such assessments was by a sale of the shares. The court said:

"There is no promise to pay assessments, but only the agreement that, if $500 per share should be sufficient, assessments might be made; evidently meaning to place them upon the common ground of assessments which are enforced by a sale of the shares."

The same question was before the court in Machine Co. v. Hall, 121 Mass. 272, and it was held (Chief Justice Gray pronouncing the opinion) that, after a sale of shares of stock in a corporation for nonpayment of assessments, no action could be maintained against the stockholder for a balance due thereon. The court said:

"If it had been intended to impose any personal obligation to pay assessments, a distinct provision to that effect would have been inserted, as it has been in the railroad acts. * * * In view of the course of legislation and judicial decision in this commonwealth, the suggestion of Chief Justice Parsons [in Turnpike Corp. v. Gould, 6 Mass. 40] that any subscriber might as well rely on the right to abandon the enterprise if the assessments should become burdensome has greatly increased in force, and the adoption of a different rule by this court now would work great injustice."

This case was cited in Land Co. v. Jernegan, 126 Mass. 156, with approval.

The supreme court of New Jersey, in City of Camden v. Allen, 26 N. J. Law, 398, held that payment of taxes could not be enforced by an action of debt, and that, where the statute provided another mode of recovery, they could only be collected in. that mode.

In Shaw v. Peckett, 26 Vt. 482, in City of Carondelet v. Picot, 38 Mo. 125, in Richards v. Stogsdell, 21 Ind. 74, and in Packard v. Tisdale, 50 Me. 376, it was held that the method of recovery prescribed by the statute was exclusive. There are cases which recognize the right to maintain an action for taxes, and treat the remedy provided by the statute as cumulative merely. See Dugan v. Mayor, etc., of Baltimore, 1 Gill & J. 499; State v. Southern Steamship Co., 13 La. Ann. 497; and other cases cited in Cooley, Tax'n (2d Ed.) pp. 15, 16. But the cases which hold that, where a special remedy is provided by statute, an action does not lie, are approved by the supreme court of the United States in Lane Co. v. Oregon, 7 Wall. 71–80, where Shaw v. Peckett and City of Camden v. Allen, supra, are quoted. Chief Justice Chase, announcing the opinion of the court, said: "We all think that the interpretation which they sanction is well warranted." Upon the language of section 5205, and upon the authorities above cited, I am of opinion that an action cannot be maintained in this case even if the assessment be valid. I am of opinion also that the assessment is invalid because made by the directors, and not by a majority of the stockholders themselves. The demurrer will be sustained, and the plaintiff's petition dismissed.