## WEINHARD v. COMMERCIAL NATIONAL BANK.

### WILLIAMS v. SAME.

[68 Pac. 806.]

ERROR CURED BY SUBSEQUENT EVIDENCE.

1. Where, in an action for conversion of stock of a bank, plaintiff offered no testimony in his case in chief as to the value of the stock, and a nonsuit was denied, but on appeal it appeared that the bank was a going one, so that the stock must have had some value, and it appeared from the opinion of the trial court, made a part of the bill of exceptions, that much testimony was taken as to the value of the stock, any error in refusing the nonsuit will be regarded as cured.

NATIONAL BANKS—ASSESSMENT TO RESTORE IMPAIRED CAPITAL.

2. Under Section 5205, Rev. Stat. U. S. providing that every national banking association, whose capital stock shall have been become impaired, shall, after receiving notice thereof from the comptroller of the currency, pay the deficiency by a *pro rata* assessment upon the shareholders, and that if any such association shall fail to pay up its capital stock or go into liquidation, a receiver may be appointed to close up its affairs, the right to determine the course that shall be pursued rests with the shareholders, and cannot be exercised by the directors.

From Multnomah: ALFRED F. SEARS, JR., and ARTHUR L. FRAZER, Judges, in joint session.

Two separate actions were brought by Henry Weinhard and George H. Williams, respectively, to recover the value of certain shares of stock in the defendant corporation (the Commercial National Bank of Portland, Oregon,) alleged to have been wrongfully converted by it. As the same questions are involved in each case, they are here considered together. The defendant is a banking association, organized under the national bank act. On December 5, 1896, the comptroller of currency found that its capital stock had become impaired to an extent which made necessary an assessment of $250,000, and notified the association to pay the deficiency by assessments upon its shareholders *pro rata,* and that, if not so paid, and the bank should refuse to go into liquidation, as provided by law, for three months after the receipt of the notice, a receiver would be appointed to close up its business. Upon the receipt of the notice, the directors of the bank held a meeting, and levied an assessment upon each shareholder of 50 per cent, or $50 dollars per share, payable on or before March 11, 1897. At the time of such assessment, Weinhard owned 100 shares of the capital stock, fully paid up, of the par value of $10,000, and Williams, 60 shares, of the par value of $6,000, likewise fully paid up. They both refused or neglected to pay the assessment levied by the directors, and on May 5, 1897, their stock was sold at public auction, in pursuance of a resolution of the board, and the bank received on such sale the amount of the assessment. Thereafter these actions were brought to recover the value of the stock sold by the corporation, alleging it to be worth par, on the ground that the assessment was invalid, and without authority of law. The plaintiffs recovered judgment in the court below, and the bank appeals.

AFFIRMED.

For appellant there was a brief over the name of *Platt & Platt (Mr. E. S. Pillsbury* of counsel), with an oral argument by *Mr. Harrison G. Platt.*

For respondent there was a brief over the name of *Thomas O'Day (Geo. H. Durham* and *O'Day & Tarpley* of counsel),

with an oral argument by *Mr. O'Day, Mr. Geo. H. Durham,* and *Mr. Geo. H. Williams.*

MR. CHIEF JUSTICE BEAN, after stating the facts, delivered the opinion of the court.

Two questions are presented for our determination on this appeal: *first,* it is insisted that the court erred in overruling the defendant's motion for a nonsuit; and, *second,* in holding that under the national bank act the authority to levy assessments upon the shareholders of a bank for the purpose of repairing its capital stock is vested in the shareholders themselves, and not in the directors.

1. The plaintiffs offered no testimony, as part of their case in chief, tending to show the value of the stock alleged to have been converted by the defendant, and for this reason it is urged that the motion for a nonsuit was well taken. At the time of the sale the bank was a going concern, engaged in the transaction of the ordinary business of a banking association, and it may be presumed, we think, that its stock had some value, at least sufficient to entitle the plaintiffs to a nominal judgment, if their stock had been wrongfully converted. In addition to this, it appears from the opinion of the trial court, which is set out in full, and made a part of the bill of exceptions, that "much testimony was taken, and voluminous briefs have been presented by the respective counsel," upon the question as to the value of the stock; so it would seem that, if there was error in overruling the motion for a nonsuit, it was subsequently cured.

2. The other question involves a construction of the national bank act. It provides, in brief, that any number of natural persons, not less than five, may form an association for carrying on the business of banking, by executing and filing with the comptroller of the currency articles of association and an organization certificate, stating certain facts: Rev. Stat. U. S. §§ 5133, 5134, 5135. Such association thereupon becomes a body corporate, with power, among other things, to elect or appoint directors, and, by such directors, to appoint a presi-

dent, vice president, cashier, and other officers, etc.; to prescribe by-laws, regulating the manner in which its stock shall be transferred, its directors and officers elected or appointed, its general business conducted, and the privileges granted to it by law exercised and enjoyed, and to exercise all such incidental powers as shall be necessary to carry on the business of banking, etc.: Rev. Stat. U. S. § 5136. At least 50 per centum of the capital stock must be paid in before the bank can be authorized by the comptroller of the currency to commence business, and the remainder in monthly installments of at least 10 per centum, which fact shall be certified to such officer under oath: Rev. Stat. U. S. §§ 5139, 5140. The affairs of each association shall be managed by not less than five directors, who shall be elected by the shareholders: Rev. Stat. U. S. § 5145. The shareholders are individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of the association, to the extent of the amount of their stock therein, at its par value, in addition to the amount invested in such shares (Rev. Stat. U. S. § 5151), and no association, or any member thereof, shall, during the time it shall continue its banking operations, withdraw or permit to be withdrawn, either in the form of dividends or otherwise, any portion of its capital (Rev. Stat. U. S. § 5204). Section 5205 reads as follows: "Every association which shall have failed to pay up its capital stock, as required by law, and every association whose capital stock shall have become impaired by losses or otherwise, shall, within three months after receiving notice thereof from the comptroller of the currency, pay the deficiency in the capital stock, by assessment upon the shareholders *pro rata* for the amount of capital stock held by each; and the Treasurer of the United States shall withhold the interest upon all bonds held by him in trust for any such association, upon notification from the comptroller of the currency, until otherwise notified by him. If any such association shall fail to pay up its capital stock, and shall refuse to go into liquidation, as provided by law, for three months after receiving notice from the comp-

troller, a receiver may be appointed to close up the business of the association, according to the provisions of section fifty-two hundred and thirty-four.'' The assessment and subsequent proceedings in this case were had under the provisions of the section quoted, and the question for our decision is whether, when the comptroller of the currency finds that the capital stock of a national bank has been impaired, by losses or otherwise, and notifies the association to make up the deficiency by assessment on its shareholders or a receiver will be appointed, such assessment is to be made by the shareholders or directors of the association.

In our opinion, the language of the section plainly implies that, upon receiving such notice, the association may elect to either continue in business by increasing the amount of the investment, or go into voluntary or involuntary liquidation, and, as this question affects the shareholders alone, they, and not the directors, are entitled to determine the course that shall be pursued. The individual liability of the shareholders in a national bank is fixed by statute at the par value of the stock held by each, in addition to the amount invested in such shares (section 5151), and does not arise except in case of liquidation and for the purpose of winding up the affairs of the institution. There is no legal obligation on their part to pay an additional assessment necessary to repair the capital stock, unless it is voluntarily authorized by them. Their only obligation, when notice is given by the comptroller of the currency of the impairment of the capital stock of the bank, is either to assess themselves and make up the deficiency, and thus increase their investment, or to go out of business, and, we think, the law contemplates that this right shall be exercised by them alone. If they desire and elect to continue in business they must make up the deficiency; but they are, in our opinion, at liberty to take the other alternative and allow the corporation to go into liquidation. The question is a federal one, and, so far as we are advised, has never been directly passed upon by the Supreme Court of the United States. In *Delano* v. *Butler*, 118 U. S. 634 (7 Sup. Ct. 39), the court was called upon

to decide whether payments made upon assessments voluntarily levied by the shareholders, under Rev. Stat. U. S. § 5205, could be applied in the discharge of subsequent assessments made by the comptroller in final liquidation of the bank, under section 5151. It was held that they could not. Mr. Justice MATTHEWS' opinion proceeds on the theory that the assessment contemplated by section 5205 is one to be imposed on the shareholders by their own vote, for the purpose of restoring their lost capital, as a consideration for the privilege of continuing in business; while, under section 5151, the shareholders may be compelled to discharge their individual responsibility for contracts, debts, and engagements of the association. He says: "The assessment as made under section 5205 is voluntary, made by the stockholders themselves, paid into the general funds of the bank as a further investment of the capital stock, and disposed of by its officers in the ordinary course of its business. It may or may not be applied by them to the payment of creditors, and in the ordinary course of business certainly would not be applied, as in cases of liquidation, to the payment of creditors ratably; whereas, under section 5151, the individual liability does not arise, except in case of liquidation, and for the purpose of winding up the affairs of the bank. The assessment under that section is made by authority of the comptroller of the currency, is not voluntary, and can be applied only to the satisfaction of the creditors equally and ratably." These remarks are, of course, not authoritative, because they were not necessary to the decision of the case; but they are, nevertheless, very persuasive, and indicate the views of the learned justice, if not the entire court.

In *Hulitt* v. *Bell*, 85 Fed. 98, the Circuit Court of the United States for the Southern District of Ohio, in an able and well-reasoned opinion by Judge SAGE, held that an assessment levied by a board of directors of a national bank to make up a deficiency in its capital stock, under section 5205, was invalid, and not within the power of the directors, but should have been made by the shareholders themselves. After referring to the duties and powers of the directors as provided in

the bank act, he says: "The assessment in question does not fall within any of these powers. It does not come under the head of incidental powers necessary to carry on the business, nor is it included in the conduct of general business. It is a provision for a special emergency, so unusual and of such importance as to make it necessary for the association to consider and determine whether it will continue in business or wind up its affairs. The impairment of the capital may have resulted from inefficiency or incapacity or the fault or wrong of the directors under whose administration of the affairs of the bank it occurred. Their holdings of the capital stock may be but a small proportion of the entire amount. They ought not to exercise control over a matter so vital, unless the statute gives it to them in unmistakable terms." It is argued that the opinion of the court upon this point is entitled to but little weight, because the case could have been, and was, decided upon another point. The validity of the assessment was directly involved in the case argued by counsel and considered and passed upon by the court, and, if the opinion of Judge SAGE is *dictum* at all, it should, as said by Mr. Justice CASSIDAY, in *Buchner* v. *Chicago, M. & N. W. Ry. Co.* 60 Wis. 264 (19 N. W. 56), "be regarded as 'judicial *dictum*,' in contradistinction to mere *obiter dictum*." It was not a mere argument or illustration of some collateral question, but was the opinion of the court upon a litigated point in the case, and is entitled to be considered and recognized as such. The judgment of the court below will therefore be affirmed. AFFIRMED.