Argued and submitted June 4, 2008, order of Court of Appeals reversed, and case remanded to Court of Appeals for further proceedings July 23, 2009

## STATE OF OREGON,
*Petitioner,*

*v.*

## William AINSWORTH,
*Respondent.*

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## Jan M. AINSWORTH,
nka Jan M. Conners,
*Petitioner on Review.*

## (CC 90DM0110; CA A130354; SC S055558)

213 P3d 1225

Steven H. Gorham, Salem, argued the cause and filed the brief for petitioner on review Jan M. Conners.

Erika L. Hadlock, Assistant Solicitor General, argued the cause for respondent on review. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

LINDER, J.

Durham, J., specially concurred and filed an opinion, in which De Muniz, C. J., and Gillette, J., joined.

**LINDER, J.**

This case arises from an attempt by petitioner on review (mother) to appeal a trial court judgment finding her in contempt of court for failure to pay child support. Mother failed to timely appeal the original judgment finding her in contempt. Mother thereafter moved for entry of an amended judgment, relying on an affidavit from her attorney explaining why he did not discover that the original judgment had been entered until after the time to appeal had expired. The trial court granted the motion, and mother, within 30 days of the entry of the amended judgment, filed a notice of appeal. Citing *Far West Landscaping v. Modern Merchandising*, 287 Or 653, 601 P2d 1237 (1979), the Court of Appeals concluded that the trial court did not have authority to enter the amended judgment and issued an order dismissing mother's appeal for lack of jurisdiction.

We allowed mother's petition for review. On review, the parties renew the arguments they made to the Court of Appeals, which center on whether this court's holding in *Far West* remains correct in light of subsequent changes to the Oregon Rules of Civil Procedure (ORCPs). As we will explain, those legislative changes do not provide a basis for departing from the holding in *Far West*. However, as we also will explain, we further conclude, for an alternative reason, that the trial court had authority to amend its judgment under the circumstances presented to it. We therefore reverse the order of the Court of Appeals and remand to that court for further proceedings.

The pertinent facts are procedural. Between 2002 and 2004, a series of administrative orders required mother to pay varying amounts of child support to her former husband. When mother failed to make some of the required payments, the state filed a motion seeking remedial contempt sanctions for mother's nonpayment of support.[1] After an extended hearing on the motion, the trial court found mother

---

[1] The state, pursuant to the procedures contained in various provisions set out in ORS chapter 25, commenced the contempt proceeding under ORS 33.055 to enforce the child support award.

in contempt, ordered mother to pay the monthly child support as scheduled, and further ordered mother to pay an additional 20 percent of the monthly support amount (specified as $51 per month) to repay the arrearage that mother owed. On August 25, 2005, the trial court signed a judgment memorializing that decision. The judgment was entered in the register on that same date.

Mother did not appeal that judgment within 30 days, as required by ORS 19.255(1). Nevertheless, a few days after the time to appeal expired, mother's counsel in the contempt proceeding filed a motion asking the trial court to appoint appellate counsel for her. In support of that motion, counsel attached his affidavit explaining why he did not know, until after the time to appeal had expired, that the contempt judgment had been prepared, signed, and entered. In substance, trial counsel averred that:

- after the court announced its decision on August 19, 2005, the state was directed to prepare the judgment for the trial court;

- counsel's office waited for its service copy of the judgment, knowing that mother wanted to appeal;

- counsel's office never received a service copy of the judgment that the state had prepared;

- mother called counsel on September 26, 2005, to ask about the status of the appeal, which caused counsel to consult the Oregon Judicial Information Network (OJIN) about the status of the case;

- OJIN indicated that the judgment had been entered on August 25, 2005;

- OJIN indicated that the clerk had sent copies of the judgment to father, to the state, and to an attorney who previously had represented mother in connection with her support obligation, but not to the attorney who represented mother in the contempt matter;

- OJIN did not reflect that mother's counsel was given a copy of the judgment at the hearing on August 19, 2005, and counsel in fact did not receive a copy of the judgment at that hearing.

The trial court granted the motion and appointed appellate counsel for mother. Appellate counsel then filed a further motion asking the trial court to enter an amended contempt judgment based on "the notice irregularities that took place in this matter." In support of that motion, appellate counsel relied on the affidavit that mother's trial counsel previously had submitted to the trial court, with the averments described above. The state did not oppose mother's motion; rather, as the state now describes it, the state "acquiesced" in entry of an amended judgment. No hearing was held on the matter, and the trial court signed an amended judgment on October 12, 2005, *nunc pro tunc* August 25, 2005, which was identical in substance to the original judgment. The amended judgment was entered in the register on October 13, 2005, and mother filed a timely notice of appeal from that judgment.

After mother filed her opening brief, the state moved to dismiss the appeal for lack of jurisdiction. The state argued that the trial court had amended the judgment solely to give mother additional time to file her appeal, which the trial court had no authority to do under this court's decision in *Far West*. Mother, in response, urged that *Far West* was either wrongly decided or not controlling. As noted, the Court of Appeals agreed with the state and dismissed the appeal by order; this court then allowed mother's petition for review.

On review, the parties' arguments largely reprise those that they made to the Court of Appeals. Central to their positions are their competing views of the continuing validity of this court's decision in *Far West*, which addressed a trial court's authority to vacate and reenter a judgment to revive the party's right to appeal. We therefore begin our analysis by examining that decision.

In *Far West*, after the plaintiff prevailed in an action for the reasonable value of landscaping work, counsel for the defendant contacted the trial court judge to ask if the judgment had been signed. The trial judge told counsel that he had not signed the judgment and further agreed not to do so until a specified later date as an accommodation to the defendant's counsel, who was to be out of town for a while and who anticipated that her client would want to appeal. The trial

judge, however, was mistaken about the status of the judgment. In fact, the trial judge already had signed it. In addition, the clerk had entered the judgment in the register. The court clerk, however, had not sent counsel a copy of the signed judgment and notice of the date of its entry. Relying on the trial judge's mistaken representation that he had not signed the judgment, defense counsel did not personally check the court register and therefore did not discover, until after the time to appeal had expired, that the judgment had been entered. On the defendant's motion, the trial court set aside the judgment and entered a second identical judgment, from which the defendant then attempted to appeal. The plaintiff moved to dismiss the appeal on the ground that the trial court had no authority to set aside the judgment and to enter a second identical one, and that the appeal was therefore untimely. The Court of Appeals agreed and, by order, dismissed the appeal. 287 Or at 655.

On review, this court affirmed. In doing so, this court rejected three arguments that the defendant advanced in support of the trial court's authority to vacate the original judgment and to enter the subsequent identical one.

First, the court considered the trial court's authority under *former* ORS 18.160 (1979), the predecessor to ORCP 71 B, to relieve a party from a judgment based on the party's "mistake, inadvertence, surprise or excusable neglect."[2] The court cited a settled line of prior cases, tracing back to the late 1800s and early 1900s, interpreting the substantially identical predecessor statute that had been in place since statehood.[3] In those prior cases, the losing party had failed to file a

---

[2] In full, *former* ORS 18.160 (1979) provided:

"The court may, in its discretion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, decree, order or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect."

That statute was repealed in 1981, *see* Or Laws 1981, ch 898, § 53, and, in the same enactment, was replaced by ORCP 71, the pertinent parts of which we quote and discuss in more detail later in this opinion, *see* Or Laws 1981, ch 898, § 1 (adopting additional Oregon Rules of Civil Procedure, promulgated by the Council on Court Procedures). For ease of reference, throughout this opinion, we refer to the former version of the statute simply as ORS 18.160.

[3] The statute authorizing a trial court to give relief from judgment based on "mistake, inadvertence, surprise or excusable neglect" was first codified in the

timely appeal after relying on a trial court's or clerk's incorrect advice that no judgment had been entered, rather than checking the record personally. *Western Land, etc. Co. v. Humfeld*, 118 Or 416, 419, 247 P 143 (1926); *Haas v. Scott et al.*, 115 Or 580, 585, 239 P 202 (1925); *Tongue v. Brewster*, 35 Or 228, 228-29, 58 P 38 (1899). In each case, this court held that the statute did not authorize the trial court to vacate a judgment and to enter a subsequent identical judgment solely to give the party a new time period in which to bring an appeal. *Far West*, 287 Or at 656-57 (discussing *Western Land, etc. Co.*, 118 Or at 419-20; *Haas*, 115 Or at 589; *Tongue*, 35 Or at 229-30).

In *Far West*, quoting and paraphrasing key passages from those prior cases, this court identified three independent, but related, rationales for that limitation on the trial court's authority under ORS 18.160. 287 Or at 656-60. As the court had explained in *Tongue*, by providing authority to relieve a party from judgment, the statute was aimed at giving the moving party an opportunity to be "let in to defend upon the merits," not an opportunity to pursue an appeal of a properly entered judgment after the time for doing so had expired. 35 Or at 229-30; *accord Haas*, 115 Or at 589. The court in *Tongue* also concluded that, for a party to rely on the mistaken advice of a trial judge or court clerk, when the party "could easily have consulted the record, and ascertained therefrom the true condition of the case," was not "excusable neglect" or other justification under the statute for relief from the original judgment. 35 Or at 229; *accord Haas*, 115 Or at 588-89. Finally, in *Western Land, etc. Co.*, the court explicitly reasoned that, to permit an original judgment to be vacated and reentered solely so that an appeal could be pursued, would be "tantamount to nullifying the statute fixing the time in which appeals may be taken." 118 Or at 420. After setting out those rationales from the prior cases, this court in *Far West* added one more: that the judgment in *Far West* had been signed and entered several days before the trial court mistakenly advised the defendant to the contrary; thus, the judgment was not taken "through" mistake or inadvertence,

---

Deady Code. General Laws of Oregon, Civ Code, ch I, title XII, § 100, p 163 (Deady 1845-1864).

as the statute by its terms required, and instead was entered before the mistake occurred. 287 Or at 657.

After concluding that ORS 18.160 did not authorize the trial court's action, the court in *Far West* next considered whether the trial court had inherent authority to enter the subsequent judgment. The court recognized that, ordinarily, a trial court has inherent authority within a reasonable time to vacate a judgment and modify it to rectify its own mistake. *Id.* at 658. Under the particular circumstances involved, however, the trial court's doing so had the effect of "lengthening the statutory time for appeal" beyond the time prescribed by *former* ORS 19.026 (1979). *Id.* The trial court's action thus directly contradicted the statutory declaration in *former* ORS 19.033(2) (1979) that timely filing of an appeal "is jurisdictional and may not be waived or extended." *Id.* at 658-59. By way of a footnote, the court in *Far West* further observed that the long-standing rule appeared to be that a trial court has no authority, after expiration of the time for appeal, to enter the same judgment a second time so that an appeal may be taken therefrom. *Id.* at 659 n 1 (citing *Clarkson v. Wong*, 150 Or 406, 413, 42 P2d 763, 45 P2d 914 (1935)). The court therefore held that a trial court has no inherent authority to set aside one judgment and enter another when the court does so *"for the sole purpose* of extending the time for appeal." *Far West*, 287 Or at 659 (emphasis in original).

Finally, the court in *Far West* considered and rejected the defendant's reliance on the clerk's failure to mail a copy of the judgment and notice of the date of entry, as statutorily required.[4] Again, the court relied on the unqualified declaration in *former* ORS 19.033(2) (1979) that timely filing

---

[4] *Former* ORS 18.030 (1979) required the clerk, on the date that judgment is entered, to "mail a copy of the judgment and notice of the date of entry of the judgment to each party who is not in default for failure to appear." The clerk also was required to "make a note in the docket of the mailing." *Id.* That statute was repealed and replaced with *former* ORCP 70 B (1981), which required the clerk to mail notice of entry of judgment to the parties and note that mailing in the register. Or Laws 1981, ch 989, §§ 1, 53. *Former* ORCP 70 B (1981) did not, however, require the clerk to send the parties copies of the judgment itself. ORCP 70 B since has been repealed as well, and replaced by ORS 18.078. Or Laws 2003, ch 576, § 580. That statute substitutes the term "court administrator" for "court clerk," but otherwise retains the requirement for mailing notice of the entry of judgment to the parties and for noting that mailing in the register.

of a notice of appeal could not be waived or extended. *Id.* at 660. The court was unwilling to hold that "the legal effect of the judgment, for purposes of appeal," could be "impaired by the clerk's failure to comply with an administrative duty" in the absence of an express statutory provision "clearly indicat[ing]" that the legislature so intended. *Id.*

The issue framed by the parties in this case is whether, since this court's decision in *Far West*, the legislature has changed the statutory scheme to provide a trial court with the authority to amend a judgment under the particular circumstances involved in that case. In that regard, mother points out that, after *Far West* was decided, the legislature enacted ORCP 71.[5] In part, mother relies on ORCP 71 C, which provides:

> "This rule does not limit the inherent power of a court to modify a judgment within a reasonable time, or the power of a court to entertain an independent action to relieve a party from a judgment, or the power of a court to grant relief to a defendant under Rule 7 D(6)(f), or the power of a court to set aside a judgment for fraud upon the court."

Mother argues that, pursuant to that provision, the trial court had inherent authority in this case to vacate the original contempt judgment and to reenter it, as long as the court did so within a reasonable time.[6]

■     For two reasons, we disagree. First, the express terms of ORCP 71 C refer to the trial court's inherent power "to modify" a judgment. Here, the trial court did not modify the terms of the judgment in any way—rather, it subsequently entered a judgment that was identical in substance to the original one. Second, even if the trial court's reentry of the identical judgment could qualify as a "modification" of the judgment, ORCP 71 C is a *reservation* of inherent trial court authority, not a *source* of inherent authority. That provision

---

[5] *See* Or Laws 1981, ch 898, § 1 (adopting the Oregon Rules of Civil Procedure, promulgated by the Council on Court Procedures).

[6] Mother also argues that *Far West* was wrong in concluding that, when a clerk has failed to provide the statutorily required notice of entry of judgment, a trial court has no inherent authority to vacate a judgment and enter a subsequent identical one to preserve the losing party's right of appeal. *See Far West*, 287 Or at 658-59. Mother urges us to overrule *Far West* in that respect. We decline to do so.

thus preserves whatever inherent authority a trial court had before the enactment of ORCP 71 C, but it does not add to that authority. *Far West* adhered to the rule that a trial court has no inherent authority to vacate a properly entered judgment and then reinstate the identical judgment, when the sole purpose for doing so is to extend the statutorily fixed time to appeal for a party who failed to check the record and determine that judgment had been entered. ORCP 71 C does not alter that holding.

Mother also relies on ORCP 71 B(1), which as relevant to this case provides, in part:

> "On motion and upon such terms as are just, the court may relieve a party or such party's legal representative from a judgment for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect[.]"[7]

Mother argues that the clerk's failure to send her counsel the statutorily required notice of entry of judgment is the kind of mistake that the legislature intended to authorize a trial court to remedy. Mother does not, however, point to anything in the wording of ORCP 71 B to support her position. The state, for its part, identifies several ways in which ORCP 71 B differs textually from its predecessor, at least in some of its terms. The state urges that, notwithstanding those differences, the statute is largely unchanged from ORS 18.160 and that the holding in *Far West* remains sound. As we will explain, we agree with the state.

A comparison of the text of ORS 18.160 with the text of ORCP 71 B(1)(a) reveals one material way in which, as pertinent here, the statute has changed.[8] Under ORS 18.160, a

---

[7] The rule continues by listing a range of other circumstances for which a trial court is authorized to vacate a judgment, many of which were not encompassed in predecessor statutes. None of those other circumstances, however, applies in this case. We therefore address only ORCP 71 B(1)(a).

[8] That is not to say that there are not other important differences between ORCP 71 B and its predecessor. For example, ORCP 71 B(1) now permits a trial court to relieve not only a party from a judgment, but also "such party's legal representative." Also, in other paragraphs, the statute includes a much more extensive list of grounds for relieving a party from judgment, such as newly discovered evidence and fraud of an adverse party. ORCP 71 B(1)(b), (c). Those undoubtedly are significant changes in the text of the statute; they just are not significant for purposes of the issue in this case.

court could "relieve a party from a judgment * * * taken *against him* through *his* mistake, inadvertence, surprise or inexcusable neglect." (Emphases added.) ORCP 71 B, in contrast, permits a trial court to relieve a party from judgment based on "mistake, inadvertence, surprise, or excusable neglect," without regard to who made the mistake (or other error) and without regard to whether judgment was taken "through" that mistake (or other error). Thus, to the extent that *Far West* relied on the timing of the mistaken advice from the trial court and the clerk's failure to send notice—*i.e.*, that those events occurred after judgment had been entered—ORCP 71 B(1)(a) by its terms does not foreclose consideration of such a mistake.

But that was not the only underpinning of *Far West* or the settled cases that *Far West* relied on. Insofar as the other underpinnings are concerned, ORCP 71 B(1)(a) is unchanged. In particular, ORCP 71 B(1) did not expand or alter the available grounds for giving relief from a judgment under paragraph (a). Those grounds continue to be "mistake, inadvertence, surprise, or excusable neglect." Since at least 1899, this court has held that it is not excusable neglect, or otherwise within those statutory grounds for relief, for a party (or the party's attorney) to rely on advice that judgment has not been entered, rather than check the record personally at a time when doing so would reveal the true status of the judgment. *Tongue*, 35 Or at 229. We would expect that, if the legislature had intended to change the well-settled and long-standing law on that point, the legislative history of ORCP 71 B(1)(a) likely would suggest as much. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (regardless of whether statutory text is ambiguous, the court may consider pertinent legislative history). It does not.[9]

---

[9] ORCP 71 was drafted by the Council on Court Procedures and adopted without change by the legislature. In those circumstances, the intent of the Council guides us in the interpretation of the rules of civil procedure. *Waddill v. Anchor Hocking, Inc.*, 330 Or 376, 382 n 2, 8 P3d 200 (2000). ORCP 71 was one of many rules promulgated by the Council during the 1979-81 biennium that were intended to consolidate and codify in the Oregon Rules of Civil Procedure a host of statutory civil procedure provisions that previously had been codified elsewhere.

The Council's comments pertaining to ORCP 71 span nine pages. *See* Oregon Council on Court Procedures, 1 Oregon Rules of Civil Procedure and Amendments: 1979-1980 Biennium, 10/15/79, Draft of Proposed Rules 67-74. Early in those comments, the Council expressly noted that, in general, ORCP 71 "basically preserves" the preexisting authority of trial courts to modify or vacate their judgments, noting

Finally, *Far West* also cited *Western Land, etc. Co.*, 118 Or at 420, for the rationale that it would be "amount to a nullification of the statute fixing the time within which an appeal could be taken" to permit an original judgment to be vacated and reentered solely so that an otherwise untimely appeal could be pursued. *Far West*, 287 Or at 657. The legislature has not changed the statutory policies favoring the finality of judgments or created an exception to those policies that would apply here. Under ORS 19.255(1) (*formerly* ORS 19.026), a notice of appeal still must be filed within 30 days after the judgment is entered in the register. Under ORS 19.270(2) (*formerly* ORS 19.033(2)), timely filing of the notice of appeal remains jurisdictional and "may not be waived or extended."

■ Indeed, related statutes enacted in 2003, after this court decided *Far West*, emphasize the legal significance that the legislature places on *entry* of the judgment in the register. Under ORS 18.082(1)(d), entry of the judgment, not notice of entry, "[a]cts as official notice of the court's decision[.]" Once entered, the judgment "[m]ay be enforced in the manner provided by law[.]" ORS 18.082(1)(b). Also, once entered, the judgment "[m]ay be appealed in the manner provided by law[.]" ORS 18.082(1)(c). No similar legal significance attaches to the clerk's notice of entry of the judgment. Finally, under ORS 18.245(3), the clerk's failure to note in the register that the judgment document was filed is a jurisdictional defect for purposes of appeal; the clerk's failure to send the parties notice of entry of judgment, however, is not.[10]

---

that the "tension in this area is between a desire to achieve reasonable finality of judgments and a desire to provide adequate remedies to correct injustice." Staff Comments at 62. In the Council's view, the "existing range of available post judgment remedies appears to be reasonably satisfactory and is retained." *Id.* After that observation, the Council discussed ORCP 71 subsection by subsection, frequently citing judicial decisions interpreting the various statutes that were absorbed into ORCP 71, and noting whether ORCP 71 would adhere to or change those precedents. *Far West* is not mentioned anywhere in the Council's comments; neither was the well-settled principle that it reaffirmed. *See Zacker v. North Tillamook County Hospital Dist.*, 312 Or 330, 336, 822 P2d 1143 (1991) (court would not imply legislative intent to overturn holding of particular case by amendments to statute when legislative history lacked any reference to particular case but did refer to other decisions of Supreme Court and Court of Appeals).

[10] ORS 18.245 was enacted in 2005 and ordinarily would not have taken effect in time to apply to the judgment in this case, which was entered in August 2005. However, ORS 18.245 expressly applies to all judgments entered on or after January 1, 2004. Or Laws 2005, ch 568, § 7.

In short, nothing in the current statutory provisions that apply to this case provides a basis to conclude that the holding in *Far West* is no longer correct. The legal principle for which that case stands is long-standing and has been applied, both by this court and the Court of Appeals, in numerous cases since *Far West* was decided.[11] The legislature is free to fashion a remedy for a party who misses the deadline for filing an appeal, in a situation where the clerk fails to send that party notice of entry of judgment, and the party fails personally to check the record to determine if judgment had been entered. As yet, however, the legislature has not done so.[12]

We therefore adhere to the holding in *Far West*, 287 Or 653. In doing so, we emphasize that our holding is specific to the factual circumstance that this case entails. Specifically, we address only the circumstance in which a party fails to timely appeal a judgment—one that was neither entered in error nor mistaken in its substance—because the party relied on lack of notice or misadvice about entry of judgment, instead of personally checking the record at a time when the record would have revealed that judgment in fact had been entered.[13] In that circumstance, a trial court is not authorized

---

[11] Those cases include *Young v. Peterson*, 304 Or 421, 422, 746 P2d 217 (1987); *Farmers Ins. Group v. SAIF*, 301 Or 612, 619, 724 P2d 799 (1986); *Columbia River Television v. Multnomah Co.*, 299 Or 325, 329, 702 P2d 1065 (1985); *U.S. National Bank v. Heggemeier*, 106 Or App 693, 697, 810 P2d 396 (1991); and *Junction City Water Control v. Elliott*, 65 Or App 548, 552, 672 P2d 59 (1983).

[12] The lack of any apparent legislative response to *Far West* stands in sharp contrast to the other areas in which the legislature has made appellate requirements more lenient. *See, e.g.*, ORS 138.071(5) (2007) (describing procedure and requirements for obtaining delayed appeal outside the normal time limits in criminal cases); ORS 138.650(2) (2007) (describing procedure and requirements for obtaining delayed appeal outside the normal time limits for appeals in post-conviction cases); and ORS 419A.200(5) (describing procedure and requirements for obtaining delayed appeal outside the normal time limits for appeals in juvenile cases). Indeed, ORS 138.071(5)(c) now includes a provision that, in a criminal case only, allows for a delayed appeal up to 90 days after the "defendant *receives notice* that the judgment has been entered." (Emphasis added.) No similar provision exists for other categories of appeals.

[13] The concurrence misperceives the scope of our holding. We do not decide whether ORCP 71 B(1) would authorize a trial court to grant relief from a judgment if the trial court were to *erroneously* enter judgment—for example, if the trial court or state mistakenly did so contrary to the trial court's express promise or representation as to when judgment would be entered in the future. *See* 346 Or at 548-49 (Durham, J., concurring). Those were not the facts presented in *Far West* and they are not the facts before us in this case.

to vacate the original judgment and reenter an identical one solely to trigger a new period in which the party may appeal the judgment. ORCP 71 B(1)(a) contains no textual changes that reflect a legislative determination to alter that long-standing rule.

■ That conclusion does not end our analysis, however. As we earlier described, in moving for an amended judgment in the trial court, appellate counsel relied on the affidavit prepared by mother's trial counsel, which explained why trial counsel was not aware that the contempt judgment had been entered until after the time to appeal had expired. One of the reasons that trial counsel identified was the clerk's failure to provide mother's attorney in the contempt case with notice that the judgment had been entered. In the Court of Appeals, the parties focused exclusively on that omission on the clerk's part, and their arguments centered, as they have centered in this court, on whether *Far West* required dismissal. We agree with the Court of Appeals that, insofar as the trial court based its amendment of the judgment on the clerk's failure to send notice of entry of judgment to mother's counsel, the trial court's action was unauthorized.[14]

The affidavit prepared by mother's trial counsel, however, was not limited to the clerk's omission. The affidavit also explained that the state was directed to prepare the judgment, that counsel's office "waited for its service copy of the judgment," knowing that mother wanted to appeal, and that counsel's office never received a service copy of the judgment. In addition, the affidavit represented that "the OJIN entry does not show that a copy of the judgment was provided to mother's counsel at the August 19, 2005, hearing" and counsel in fact did not receive a copy of the judgment at that hearing.

■■ Those averments establish a different and independent omission that mother appears to have relied on before the trial court: that trial counsel was not given a service copy of

---

[14] Mother makes various other arguments as to why *Far West* is wrongly decided or why the trial court otherwise had authority to amend the judgment based on the clerk's failure to send notice of entry of judgment to mother's counsel. We conclude that none of those additional arguments has merit or requires discussion.

the proposed judgment prepared by the state, as required by UTCR 5.100(1)(a).[15] The record provides no reason to question the accuracy of those averments. They are supported by the judgment itself, which does not contain the certificate of compliance that is required by UTCR 5.100(2). Also, nothing in the trial court file indicates that the state served mother's trial counsel with a copy of the proposed judgment or that any alternatives to the requirement in UTCR 5.100(1)(a) would apply. For its part, the state never has disputed those averments by mother's trial counsel. To the contrary, the state acquiesced in entry of an amended judgment, thus waiving any factual disputes that it might otherwise have raised.[16] Finally, in granting the motion, the trial court did not suggest that it was limiting the grounds on which it did so. Consequently, we presume that the trial court acted on all grounds asserted in support of the motion, including the state's failure to serve mother's counsel with a copy of the proposed judgment, as UTCR 5.100(1)(a) required.[17]

---

[15] UTCR 5.100(1)(a) requires service of a proposed judgment on opposing counsel not less than three days before submission to the court. Service on opposing counsel is not required when the proposed judgment is accompanied with a stipulation by opposing counsel that no objection exists to the form of the judgment, UTCR 5.100(1)(b), or when the proposed judgment is mailed to an unrepresented party at the party's last known address, UTCR 5.100(1)(c), or when the proposed judgment is presented in open court with the parties present, UTCR 5.100(1)(d).

[16] The state's acquiescence in entry of the amended judgment, contrary to mother's position, does not "estop" the state from asserting a defect in the court's jurisdiction over the appeal, because jurisdiction cannot be established by the agreement or waiver of the parties. *1000 Friends of Oregon v. LCDC (Clatsop Co.)*, 301 Or 622, 632, 724 P2d 805 (1986). The state's acquiescence would, however, preclude the state from now factually disputing the averments in the affidavit that mother supplied in support of her motion to amend the judgment. The state raises no such dispute, however. At most, the state acknowledges in a footnote that counsel's averments suggest "that the prosecutor did not serve [mother's] trial lawyer with a copy of the proposed judgment she submitted to the court." The state then urges that mother has not argued "that the lack of service justified the trial court's action in amending the judgment." The question before us, however, is jurisdictional in nature. Just as we have an independent obligation to acknowledge a defect in jurisdiction if our review reveals one, *Lloyd v. Zollman*, 285 Or 161, 163 n 1, 590 P2d 222 (1979), we also have an obligation to acknowledge the existence of jurisdiction, if our review reveals a basis on which jurisdiction exists.

[17] The trial court did not hold a hearing on the motion, presumably because the state did not oppose it and, instead, "acquiesced" (to use the state's term) in entry of an amended judgment. Under those circumstances, it is particularly appropriate to resolve any doubts about the facts on which the court relied against a result that would bar the appellant from an appeal, as this court has done in other cases. *See, e.g., David M. Scott Construction v. Farrell*, 285 Or 563, 568, 592 P2d 551 (1979) (so

That additional ground for the trial court's ruling distinguishes this case from *Far West* and brings it, instead, within this court's holding in *Stevenson v. U. S. National Bank*, 296 Or 495, 677 P2d 696 (1984).[18] In *Stevenson*, the trial court had assured the plaintiffs' counsel that the court would not sign a judgment before receiving additional argument from the plaintiffs and further reflecting on the appropriate resolution of the case. However, the trial court later mistakenly signed a judgment without that additional argument, and the judgment was entered without notice of that entry to counsel. This court confirmed that *Far West*'s holding—*i.e.*, that a trial court has no authority to vacate a judgment and reenter it for the sole purpose of extending the time for appeal—remained a proper statement of the law. *Stevenson*, 296 Or at 498. The court concluded, however, that *Far West* did not control the different circumstance presented in *Stevenson*:

> "In *Far West*, the trial court had reached a final decision on all issues and the judgment had been entered before any mistake occurred. In the present case, the judgment was entered before the trial court determined the motion to reconsider and while the matter was still under advisement. This is not a case in which the trial court came to a

---

holding). *Accord Waybrant v. Bernstein*, 294 Or 650, 653, 661 P2d 931 (1983); *Mullinax and Mullinax*, 292 Or 416, 431, 639 P2d 628 (1982).

[18] Contrary to the position that the concurrence takes, *see* 346 Or at 544-47 (Durham, J., concurring), our consideration of this alternative ground for the trial court's decision does not render our discussion of the continuing validity of *Far West*'s holding *dictum*. The *Far West* issue was squarely in play throughout the proceedings in the trial court and in the Court of Appeals. It was, in fact, the only issue addressed by the parties on appeal and resolved by the Court of Appeals, and it is the only issue that, on review in this court, the parties have briefed and argued. *See Woodard v. Pacific F. & P. Co.*, 165 Or 250, 256-57, 106 P2d 1043 (1940) (endorsing the rule that "where the court bases its decision on two or more distinct grounds, each ground so specified is, as much as any of the others, one of the grounds, a ruling upon questions involved in the case, and not 'mere dictum'"); *Lovejoy v. Portland*, 95 Or 459, 472-73, 188 P 207 (1920) (where court in prior case rejected proposition that a port was a municipality within the meaning of the constitution, and then nevertheless analyzed a further constitutional issue assuming "for the sake of the argument" that the port was such a municipality, the decision of the first issue in the negative did not render the decision of the second one *dictum*); *Weinhard v. Commercial National Bank*, 41 Or 359, 365, 68 P 806 (1902) (discussion of issue in prior judicial decision was not *obiter dictum* where the issue was directly involved in the case, argued by counsel, was not mere illustration of some collateral question, and was instead the considered opinion of the court upon a litigated point).

> final decision and later set aside a judgment merely to accommodate a party who missed the time for appeal."

*Id.* The court in *Stevenson* deemed it inconsequential that, ultimately, the trial court in that case had entered a second judgment that was substantially the same as the original. *Id.* at 498, 498 n 3. Rather, the important distinction was that the trial court had acted to cure a prejudgment procedural irregularity, rather than solely to extend the time for appeal for a party who failed to timely appeal the original judgment.[19] *Id.* at 498. In that respect, *Stevenson* is consistent with the settled view that the legislative purpose of authorizing a trial court to relieve a party from judgment was to permit that party to have the benefit of the trial court's full consideration of the case in those instances in which, due to mistake, inadvertence, surprise, or excusable neglect, that consideration was somehow cut short. *See Tongue*, 35 Or at 229-30 (statute exists to "let [a party] in to defend upon the merits," not to permit an appeal after the time to appeal has expired); *Deering v. Quivey*, 26 Or 556, 559, 38 P 710 (1895), *overruled on other grounds by Wershow v. McVeety Machinery*, 263 Or 97, 500 P2d 696 (1972) (statute is designed to benefit those who, for any of the identified reasons, did not get their "day in court").

As in *Stevenson*, judgment in this case was entered before mother received the full benefit of the procedures available that might bear on what form the judgment would

---

[19] The concurrence emphasizes that in *Stevenson*, the trial court had set aside an existing judgment and issued a second identical judgment, and expresses concern that our earlier discussion of ORCP 71 C appears to conflict with this court's analysis in *Stevenson*. *See* 346 Or at 549-50 (Durham, J., concurring). With respect, the concurrence misperceives our point. ORCP 71 C preserves whatever inherent authority a trial court had before its enactment. As the court in *Far West* noted, trial courts do not have inherent authority to set aside a properly entered judgment and reenter an identical judgment *solely* for the purpose of extending the time for appeal (*i.e.*, when there is no mistake in the substance of the judgment and no unintended or improper entry of judgment). But that was not the situation that existed in *Stevenson*: there, the judgment itself was mistakenly entered at a time when the trial court had not finally decided who should prevail, but instead was awaiting further argument. The court in *Stevenson* was not wrong in holding that the trial court's action was authorized by ORCP 71 C nor in noting that ORCP 71 B—which does not require that a mistake be made by a party, as did ORS 18.160—also might provide authority for the trial court's action.

take. The trial court entered judgment despite the state's failure to serve mother's trial counsel with a copy of the proposed judgment. The trial court was entitled to consider entry of the judgment to have been premature, in that entry circumvented a prejudgment procedure that would have permitted mother to be heard on the form of the judgment.[20] In that respect, the facts here are analogous to those in *Amvesco, Inc. v. Key Title Co.*, 69 Or App 740, 687 P2d 1121 (1984). There, the Court of Appeals, relying on this court's decision in *Stevenson*, held that *Far West* did not apply to the trial court's reentry of judgment where the trial court was correcting its earlier mistake of making a premature award of attorney fees before the time for filing objections under ORCP 68 C(4)(b) had expired. *Id.* at 744. We agree with the distinction that the Court of Appeals relied on in *Amvesco, Inc.* The same distinction applies here. Although the trial court lacked authority to reenter judgment based on the clerk's failure to give mother notice of entry of judgment, the same is not true with respect to the additional ground advanced in mother's motion—the state's failure to serve mother with the proposed judgment, which in turn would have provided mother with a procedural opportunity to object to the judgment before entry. Those facts provided a basis on which the trial court was authorized to exercise its discretion under ORCP 71 B(1)(a) to reenter the contempt judgment against mother.

On that ground for mother's motion, we conclude that the trial court had authority to reenter the judgment. When mother timely appealed that judgment, the Court of

---

[20] This case illustrates why the opportunity to object to the form of the judgment is a potentially significant procedure. As earlier described, among other terms, the trial court ordered mother to pay an additional 20 percent of her monthly child support obligation, specified as $51 per month, to repay the arrearage that mother owed. However, the trial court and the parties were aware that mother had a pending modification proceeding in which she was seeking a reduction in her monthly child support obligation. Ultimately, about a month after judgment was entered in this case, mother's monthly child support obligation was reduced by more than $100 per month. Thus, 20 percent of the new obligation will be less than $51. In the judgment that the state drafted for the trial court's signature, the arrearage amount was listed as both a sum certain ($51 per month) and a percentage (20 percent of the monthly child support obligation), which conceivably could (and will) conflict. Because the state did not serve the proposed judgment on mother, mother could not, before entry of judgment, call the court's attention to the fact that the modification proceeding had not been resolved and that the amount of the final support obligation remained undetermined.

Appeals acquired jurisdiction over the case. Consequently, the Court of Appeals erred in dismissing the appeal.

The order of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further proceedings.

**DURHAM, J.,** specially concurring.

I concur in the result reached by the majority but not with its reasoning. As I explain below, the majority opinion contains an elaborate *dictum* that plays no role in deciding the issue before this court. I write separately to point out that *dictum*.

The trial court entered its original judgment in this proceeding on August 25, 2005. Mother filed no appeal from that judgment. On September 28, 2005, mother filed a motion for appointment of appellate counsel, which was granted on September 30, 2005. On October 12, 2005, mother filed a motion for entry of an amended judgment due to the clerk's mistake in failing to mail the original judgment to mother's lawyer in this contempt proceeding. The trial court, with the state's acquiescence, entered an amended judgment on October 13, 2005.

Mother appealed from the amended judgment on November 4, 2005. However, the state moved to dismiss the appeal, arguing that the August 25, 2005, judgment was the only legally cognizable judgment, that mother had appealed from that judgment beyond the statutory 30-day deadline, and that the trial court had had no authority to enter a second, identical judgment on October 13, 2005, simply to restart the time limit for filing an appeal.

The Court of Appeals agreed that the entry of an amended judgment might restart the 30-day deadline for an appeal, but "only if the amended judgment materially altered the rights or obligations of the party under the original judgment or created a new right of appeal." The Court of Appeals explained that, because the original judgment and the amended judgment were "identical in content," the amended judgment did not restart the deadline for filing an appeal. For that proposition, the court relied on a single authority: *Far West Landscaping v. Modern Merchandising*, 287 Or 653,

601 P2d 1237 (1979). The court granted dismissal of mother's appeal by order.

This case poses one issue on review: Did the trial court have authority to enter an amended judgment? This court stated the dispositive rule of law regarding that question in the following passage of *Stevenson v. U. S. National Bank*, 296 Or 495, 498, 677 P2d 696 (1984), in which this court distinguished *Far West* and held that a trial court had authority to set aside a judgment entered prematurely and without notice to counsel, and later enter an identical amended judgment to cure the court's error:

> "In *Far West*, the trial court had reached a final decision on all issues and the judgment had been entered before any mistake occurred. In the present case, the judgment was entered before the trial court determined the motion to reconsider and while the matter was still under advisement. This is not a case in which the trial court came to a final decision and later set aside a judgment merely to accommodate a party who missed the time for appeal. There is nothing in the order or any part of the record available to us to indicate that the *sole purpose* for setting aside the judgment was to extend the time for appeal, even though this was a result. We hold that the trial court's grant of the motion to set aside the judgment and issue another was authorized by ORCP 71A. and 71C. and was not an abuse of discretion."[1]

(Emphasis in original; footnotes omitted.)

In applying that rule to the facts in this case, our inquiry, simply stated, is whether the trial judge set aside the

---

[1] ORCP 71 A provides:

"Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its own motion or on the motion of any party and after such notice to all parties who have appeared, if any, as the court orders. During the pendency of an appeal, a judgment may be corrected as provided in subsection (2) of section B of this rule."

ORCP 71 C provides:

"This rule does not limit the inherent power of a court to modify a judgment within a reasonable time, or the power of a court to entertain an independent action to relieve a party from a judgment, or the power of a court to grant relief to a defendant under Rule 7 D(6)(f), or the power of a court to set aside a judgment for fraud upon the court."

original judgment for the sole purpose of extending the time for an appeal, as discussed in *Far West*, or instead set aside the original judgment to correct an absence of notice to counsel regarding the entry of judgment, as discussed in *Stevenson*. The majority decides—correctly, in my view—that the trial court did have authority, under the *Stevenson* decision, to enter an amended judgment. The majority points to the state's violation of its duty under UTCR 5.100(1) to serve mother's counsel with a copy of the proposed judgment and states:

> "That additional ground for the trial court's ruling distinguishes this case from *Far West* and brings it, instead, within this court's holding in *Stevenson* * * *."

346 Or at 539. The majority also expressly approves the conclusion of the Court of Appeals in *Amvesco, Inc. v. Key Title Co.*, 69 Or App 740, 687 P2d 1121 (1984), that *Far West* has no application when a trial court reenters a judgment to correct an earlier premature award of attorney fees. The majority states, "[t]he same distinction applies here." 346 Or at 541.

I concur that *Stevenson* controls the outcome here and that, as the majority acknowledges, *Far West* is distinguishable from this case on review. A reader might assume that, having identified the controlling authority in this case as well as the distinguishable authority on which the Court of Appeals erroneously relied, the majority simply would stop.

But the majority does not stop. Instead of citing *Far West* and explaining why its holding does not control the distinguishable facts here, the majority embarks on a lengthy discussion of why, in its view, certain alterations to ORCP 71 in 1981 did not modify the rule that *Far West* adopted (*i.e.*, trial courts may not set aside and reenter a judgment for the *sole purpose* of extending the time for appeal). The majority attempts to justify that exercise by asserting that the parties have invited this court to decide "whether this court's holding in *Far West* remains correct in light of subsequent changes to the Oregon Rules of Civil Procedure (ORCPs)." 346 Or at 526. That simply ignores the issue that this case poses. As noted above, the question on review concerns the trial court's authority to enter an amended judgment under the facts shown in the record. *Stevenson* supplies the complete answer

to that question. There is no need in this circumstance to decide whether later-enacted rules have altered the holding in *Far West*, when that holding has no conceivable impact on the decision of this case.

I am cognizant of the fact that each of the parties cites *Far West* and that the state in particular urges the court to announce that *Far West* remains good law despite later amendments to the Oregon Rules of Civil Procedure. However, it is not at all unusual for parties to cite cases and other authorities, or to present alternative arguments, to this court that, after examination, turn out to have no effect on the disposition of the case. This court's usual response to that circumstance is either to distinguish the irrelevant authorities and arguments, or to ignore them altogether, and move on. That is what should happen here. That one party strongly desires this court to confirm the continued vitality of a 30-year-old distinguishable case is no justification for this court to do so.

"*Dictum*," an abbreviation for "*obiter dictum*," refers to statements in a judicial decision that, even though relevant, are not necessary or essential to the decision of the court and have neither adjudicatory force nor precedential effect. *Black's Law Dictionary* 1102 (8th ed 2004) (explaining "*obiter dictum*," which in Latin means "something said in passing"). Occasionally, it can be difficult to identify *dictum* in a court's opinion, because nonessential legal analysis and the assertions of immaterial legal propositions can be shrouded by the certitude of the court's views. As Justice Cardozo once said, "[*D*]*icta* are not always ticketed as such, and one does not recognize them always at a glance." Benjamin N. Cardozo, *The Nature of the Judicial Process* 30 (Yale Univ Press, 1921). It is, however, essential to identify *dicta*, when they arise, so that courts and litigants in future disputes will not be misled about the precedential weight of nonessential comments in a court's decisions.

My purpose in raising the problem of *dictum* in the majority opinion is not necessarily to disagree with the majority's statement of the specific holding in *Far West*, *i.e.*, a trial court cannot set aside a judgment for the *sole purpose* of extending a party's time for filing an appeal. As noted, I also

agree that *Far West* does not affect our disposition in this case. Rather, I point out that neither the majority's citation of that distinguishable authority nor the parties' conflicting (but ultimately immaterial) arguments about the vitality of *Far West* after certain 1981 amendments to ORCP 71 has any impact on the disposition in this case. Courts commonly identify *dicta* as statements and comments in an opinion that concern some rule of law or legal proposition not necessarily involved in or essential to the determination of the case at hand. *See, e.g., In re Tuttle,* 291 F3d 1238, 1242 (10th Cir 2002) (so stating). The majority's comments about the meaning and effect of ORCP 71 on the holding in *Far West* fail that familiar test: The majority opinion could state the same holding and disposition that it now states without any citation to or discussion of the impact of ORCP 71 on *Far West.*[2]

The majority misses that point. For example, the majority asserts that the continuing vitality of the *Far West* holding was "squarely in play" in the lower courts and was the "only issue" raised on appeal by the parties and resolved by the Court of Appeals. 346 Or at 539 n 18. That demonstrates only that the parties and the Court of Appeals have discussed at length the continuing vitality of a case that does not influence our disposition of this dispute. As the majority's separate discussion of *Stevenson* demonstrates, a lengthy

---

[2] A recital of the majority's proffered legal conclusions in their logical order demonstrates the nonessential nature of the majority's statements about the effect of the 1981 amendments to ORCP 71 on *Far West Landscaping v. Modern Merchandising,* 287 Or 653, 601 P2d 1237 (1979).

The majority determines, first, that the Court of Appeals erred in concluding that the trial court had no authority to enter a second judgment. This court's analysis in *Stevenson* confirms that the trial court's action was within that court's legal authority. That conclusion requires reversal of the Court of Appeals decision.

Second, the majority concludes that this case is distinguishable from *Far West.* The state's argument, that, under *Far West,* the trial court lacked authority to enter a second judgment, is beside the point; this court's decision in *Stevenson v. U. S. National Bank,* 296 Or 495, 677 P2d 696 (1984), as noted, contradicts the state's position and confirms that the trial court's entry of a second judgment is legally authorized.

Third, notwithstanding the two conclusions noted above, the majority goes on to discuss at length the 1981 changes to ORCP 71 B and concludes that those changes did not affect *Far West.* The majority fails to explain how that determination has, or could have, any legal consequence once the majority concludes that the trial judge had authority under *Stevenson* to enter a second judgment.

review of the continuing vitality of *Far West* is not essential to the court's decision.

At the heart of the courts' resistance to *dictum* is the concern that legal error may attend nonessential legal conclusions in an opinion. I would postpone, for that reason, any comment on the meaning and effect of the 1981 amendments to ORCP 71 until those issues arise in a case that necessitates their resolution. To explain that concern, I briefly address the facts from *Far West* and the substance of the 1981 amendments to ORCP 71.

In *Far West*, mistakes by both the court clerk and the trial judge misled the lawyer for the defendant to think that the court had not signed or entered a judgment. The lawyer relied on the judge's assurance that he would not sign a judgment until after a certain date so that the lawyer could attend to a matter out of town and file an appeal upon her return. In fact, the judge already had signed and filed the judgment, the clerk had failed to mail a copy to counsel as a statute required, and the time for filing a notice of appeal had expired. The trial judge learned of the mistakes that had occurred and entered a new judgment, and the lawyer appealed from the new judgment.

The question on appeal in *Far West* was whether the trial court had authority to enter the second judgment. The majority referred to two possible sources of that authority. The first was *former* ORS 18.160 (1979), *repealed by* Or Laws 1981, ch 898, § 53, which provided at that time:

> "The court may, in its discretion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, decree, order or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect."

The court decided that the statute did not apply. Because the judgment had been taken several days before the court's mistaken misrepresentations to counsel, it was not taken *through* a mistake. *Id.* at 657.

It is worth noting that the majority opinion in *Far West* misquoted *former* ORS 18.160 (1979); the majority omitted the words "against him through his" in the statute,

which is set out above in full. Those words were significant, because they limited the court's statutory authority to set aside a judgment to circumstances in which a mistake, *even of a party*, had caused entry of a judgment against the party. Clearly, the mistake in *Far West* was attributable to the trial judge and the clerk, not to the lawyer or a party. For that separate reason as well, *former* ORS 18.160 (1979) afforded no relief to the lawyer and her client.

The court in *Far West* also examined the inherent authority of trial courts to vacate or amend their judgments, and cited numerous cases that confirm that authority. The majority nonetheless held that trial courts had no inherent authority to vacate or amend a judgment if the *sole purpose* for doing so is to extend the time for appeal. *Id.* at 658-59.[3]

Effective in 1981, the legislature repealed *former* ORS 18.160 (1979) and enacted ORCP 71. *See* Or Laws 1981, ch 898, § 53. ORCP 71 B(1) provides, in part:

> "On motion and upon such terms as are just, the court may relieve a party or such party's legal representative from a judgment for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect[.]"

As the majority correctly acknowledges, that wording introduced a substantive change to what had been the wording under *former* ORS 18.160 (1979). By deleting the words "against him through his" from the former statute, the legislature expanded trial court authority to address mistakes by persons other than a party. Read logically, that rule at least arguably would permit a trial judge to rectify mistakes by the court staff or the trial court itself. Indeed, that wording of the new rule appears to have been a direct response to the narrow view of trial court authority that led to the result in *Far West*.

The majority chooses to reject the contention that the modified wording of the new rule changed the analysis

---

[3] Chief Justice Denecke, joined by Justice Peterson, dissented. The dissenters concluded that the majority had produced an outcome that was "manifestly unfair" and an "inequitable result." *Id.* at 660, 661 (Denecke, C. J., dissenting).

that this court applied in *Far West*. The majority claims that lawyers, for decades, have not been able to establish "excusable neglect" by relying on advice from court personnel about whether the court has entered judgment; it counsels lawyers to check the record themselves. But this issue concerns the new description of the court's authority to relieve a party from a judgment entered due to someone's mistake (including the court's mistake), not excusable neglect. When read according to its terms, the new rule appears to establish that the trial court has the power to alleviate the effects of its own mistakes, not only those of a party. If the rule were so read, then, when the court carries out that judicial function pursuant to ORCP 71 B(1) and determines, for good cause, that a mistake occurred in the entry of a judgment and requires the vacation of that judgment to rectify the proven mistake, it may be said that the decision to set aside the judgment *is* "for the sole purpose" of extending the time for appeal. In short, the legislature's amendment to the terms of ORCP 71 B(1) arguably authorizes a court to act for a legitimate purpose— correction of an erroneous entry of a judgment due to a mistake by the court or staff—that was not sanctioned when this court decided *Far West*. But, whether the foregoing reading (or some other) is correct, the majority errs in purporting to give a contrary answer to that question now.[4]

The majority states that the holding in *Far West* remains in effect despite the legislature's enactment in 1981 of ORCP 71 C ("This rule does not limit the inherent power of a court to modify a judgment within a reasonable time * * *."). According to the majority, ORCP 71 C

"is a *reservation* of inherent trial court authority, not a *source* of inherent authority. That provision thus preserves whatever inherent authority a trial court had before the

---

[4] The scope of a trial court's authority under ORCP 71 B to relieve a person from a judgment for any cause, including mistake, ultimately is a matter of legislative policy, as reflected in the Oregon Rules of Civil Procedure. In view of the majority's *dicta* regarding the scope of that authority, the Council for Court Procedures may wish to inquire whether it should amend any rule of civil procedure to reflect accurately the intended legislative policy. *See* ORS 1.735 (describing authority of Council on Court Procedures to adopt amendments to, or to repeal, the rules of civil procedure).

enactment of ORCP 71 C, but it does not add to that authority."

346 Or at 532-33 (emphasis in original).

That statement about the meaning of ORCP 71 C may (or may not) be correct; but it clearly does not resolve any issue about the trial court's authority under *Stevenson* to enter a second judgment, although this court in *Stevenson* expressly cited ORCP 71 C *as a source of trial court authority to set aside an existing judgment and to issue a second identical judgment. Stevenson*, 296 Or at 498. Thus, whatever else might be said about it, the majority's statement in *dictum* that ORCP 71 C is not a "source" of trial court authority appears to conflict with this court's analysis in *Stevenson*.

The specific difference that separates the majority opinion and this concurrence can be stated succinctly. On the one hand, the majority determines that, notwithstanding the 1981 amendments to ORCP 71 B(1), if a trial court inadvertently enters a judgment on a date that contradicts a promise or representation to counsel by the trial court concerning entry of the judgment and, as a result of counsel's reliance, the appeal deadline expires, the trial court has no authority under ORCP 71 B(1), and no inherent authority, to treat that circumstance as a mistake and resolve the problem by entering a second judgment. That is the effect of the majority's statement that it "adhere[s] to the holding in *Far West*, 287 Or 653." 346 Or at 536. I, on the other hand, am of the view that the trial court may have that authority under ORCP 71 B(1). I would reserve that question for a case that raises it. This is not that case.

For the reasons expressed above, I concur in the result reached by the majority, but not in the majority's reasoning.

De Muniz, C. J., and Gillette, J., join in this specially concurring opinion.