HADLOCK, J.
*49 In this procedurally idiosyncratic criminal case, defendant was convicted of conspiracy to commit fourth-degree assault. He appeals an amended judgment that requires him, as a special condition of probation, to forfeit seven firearms that law-enforcement officers seized when they executed a search warrant. Defendant argues both that the state failed to follow required criminal-forfeiture procedures and that the trial court could not properly impose forfeiture as a condition of his probation. In response, the state asserts that defendant's challenge to the forfeiture is not properly before this court because defendant could have appealed-but did not appeal-an earlier order denying his motion to return the seized firearms. Alternatively, the state argues that the weapons were not forfeited pursuant to the criminal-forfeiture statutes in defendant's case but were, instead, forfeited as contraband in the codefendant's case. Accordingly, the state asserts, defendant has no lawful right to possess the weapons and was not entitled to their return. For the reasons set out below, we reverse the portion of the amended judgment that requires defendant to forfeit the firearms, and we otherwise affirm.
I. BACKGROUND AND PROCEDURAL HISTORY
The facts pertinent to this appeal relate to the seizure of defendant's firearms and defendant's various efforts to recover them. Those facts, which we discuss at length below, are mainly procedural and are not in dispute. Rather, the parties' arguments raise purely legal questions. We therefore review the trial court's rulings for legal error. To provide background, however, we briefly outline defendant's criminal conduct and, because defendant was convicted, we describe those facts in the light most favorable to the state. State v. Woods , 284 Or. App. 559, 561, 393 P.3d 1188, rev. den. , 361 Or. 801, 400 P.3d 926 (2017).
*155 In May 2012, defendant and his father (Gann) visited a woman named Blanco and asked her to assault another woman, Crenshaw. Defendant and Gann proposed to give Blanco some marijuana in payment. Law enforcement officers learned about the proposed assault and spoke with Gann, who subsequently told Blanco not to commit the *50 assault because "we got ratted on." Officers obtained a warrant to search Gann's house, where defendant then lived. When they executed the warrant, officers found growing and dried marijuana, as well as other evidence related to defendant's relationship with Crenshaw and the proposed assault on her. Officers also found guns in a safe in Gann's bedroom; defendant later told an officer that the guns belonged to him (defendant) and suggested that he had put the guns in Gann's bedroom to keep them away from other individuals in the house.
In a single indictment, defendant and Gann were charged jointly with solicitation (Count 1) and conspiracy (Count 2); those charges related to their plan to have Blanco assault Crenshaw. Gann alone was charged with three marijuana crimes (Counts 3 through 5) and seven counts of felon in possession of a firearm (FIP) (Counts 6 through 12). In Count 13 of the indictment, the state sought criminal forfeiture of $1194 as proceeds of one or more of the other counts alleged.
Gann eventually pleaded no contest to soliciting Blanco to assault Crenshaw, as well as to one count of unlawfully manufacturing marijuana and two counts of FIP. Sentencing in Gann's case was deferred until after defendant's trial.
Defendant's case was tried to a jury in mid-2015. The jury returned guilty verdicts on Counts 1 and 2, solicitation and conspiracy to commit fourth-degree assault.[1] In July 2015, the court entered a judgment reflecting merger of Counts 1 and 2, resulting in a single conviction for conspiracy to commit fourth-degree assault, a misdemeanor. The judgment in defendant's case reflects dismissal of the criminal forfeiture count (Count 13).
At defendant's sentencing hearing, the court indicated that it would follow the state's recommendation for two years of probation with 30 days of jail as a probation condition. The court also ordered that defendant would not *51 be permitted to possess firearms or other weapons while he was on probation. Defendant then asserted that the firearms that had been seized from the gun safe in Gann's house were defendant's firearms; he asked that the guns be released to a third person, Jepsen. The court indicated that defendant should file a motion, which the court would then review. At that point, the prosecutor stated that she would be seeking "forfeiture of all firearms" in Gann's case.
Defendant subsequently filed a written motion for return of the firearms that officers had seized in 2012, seeking to have them turned over to Jepsen. Defendant relied on " ORS 133.623 - 653"[2] in support of the motion and asserted that the firearms that the officers had seized from Gann's home were his weapons.
The trial court addressed defendant's motion at a hearing on August 14, 2015, but not until after it sentenced Gann at that same hearing. During the first part of the August 14 hearing, the state asked that Gann be sentenced to 16 months' incarceration on the conspiracy conviction and also asked the court "to allow the forfeiture on Count Thirteen, which is for the money that was found at the residence as well as the guns seized at the residence." Gann did not object to forfeiture of the money or firearms. However, he disclaimed ownership of the guns, asserting they belonged to defendant, and noted that *156 defendant would be seeking their return. In sentencing Gann, the court ruled that it would "forfeit both the cash and the firearms."
The court then asked defendant to address "the forfeiture issue on [defendant's] matter." The court asked if the issue before it was "forfeiture of the firearms," and both the prosecutor and defendant responded affirmatively. Defendant argued that, under ORS 131.582(4), criminal forfeiture proceedings had to "be tried in the same proceeding *52 * * * as the underlying co-offenses that drives the forfeiture," and asserted that had not happened in this case. Essentially, defendant argued, there was "no evidence in this case"-as opposed to Gann's case-"that the firearms were instrumentality of any crime." That is, defendant argued that his firearms should not be subject to forfeiture based on Gann's FIP convictions. The court stated that it was granting the state's motion for forfeiture based on defendant having "put those guns where [he] shouldn't have and that [he] knew [he] shouldn't have because [he] knew that Mr. Gann is a felon." By order entered the same day as the hearing, the court denied defendant's motion for return of the firearms. The substantive part of that order states only "IT IS HEREBY ORDERED THAT defendant's motion to return seized property, is * * * DENIED."
In the meantime, defendant had appealed the July 2015 judgment. After the court entered the order denying defendant's motion for return of the firearms, defendant filed an amended notice of appeal. However, he did not appeal the August 14 order denying his motion for return of the weapons. Instead, in his amended notice of appeal, defendant again appealed the July judgment; he also designated the transcript of the August 14 hearing as part of the record.
In May 2016, defendant moved the trial court to enter an amended judgment "reflecting the criminal forfeiture of defendant's property." Defendant asserted that the July 20, 2015, judgment from which he had appealed "does not accurately capture what occurred in this case with respect to defendant's firearms," leaving defendant "unable to appeal from that decision." In his motion, defendant acknowledged that, in the same hearing that it denied his motion for return of the firearms, the court granted the state's motion to forfeit those weapons. In seeking to have the trial court enter an amended judgment, defendant asserted that the difficulty with the case is that neither the judgment in his case nor the judgment in Gann's case "reflects that defendant's firearms were forfeited." Thus, defendant claimed, the judgment in his own case "erroneously states that no forfeiture occurred," leaving him unable to challenge the forfeiture. For that reason, defendant requested that the trial court enter an amended judgment indicating that the *53 trial court "granted a motion by the state to criminally forfeit defendant's firearms."
Along with his motion, defendant submitted a proposed form of amended judgment. That proposed judgment would have stated, in pertinent part:
"COUNTS DISPOSED WITH NO CONVICTION
"Count # 13, Criminal Forfeiture[,] is Dismissed, but criminal forfeiture allowed as to Defendant's firearms per Court's order on August 14, 2015."
The trial court entered an amended judgment in May 2016, but it did not follow defendant's suggestion about how the judgment should reflect forfeiture of the weapons. Instead, the court added the forfeiture requirement to the listed special conditions of probation that the court had originally imposed:
"Furthermore, Defendant is subject to the following Special Conditions of Probation ( ORS 137.540(2) ): Defendant shall:
"* * * * *
"Forfeit gun and/or weapon [listing the seven firearms]."
Defendant filed an amended notice of appeal from the May 2016 amended judgment.
II. THE PARTIES' ARGUMENTS ON APPEAL
Defendant argues on appeal that the trial court lacked authority to order criminal forfeiture of the firearms in his case for two reasons. In his first assignment of error, he asserts that the state did not adhere to the *157 statutory procedures-including giving notice to interested parties, properly including the proposed criminal forfeiture in the charging instrument, and giving interested parties an opportunity to challenge the forfeiture-that are necessary prerequisites to the criminal forfeiture of seized items. Defendant points to various provisions of ORS 131.550 to 131.600, governing criminal-forfeiture proceedings, that he contends were not followed. In his second assignment of error, defendant argues that the trial court could not properly include criminal forfeiture as a condition of his probation. *54 In response, the state does not contend that the trial court properly subjected the firearms to criminal forfeiture in defendant's case. Instead, it urges us to reject defendant's arguments for other reasons.
The state begins by arguing that defendant cannot properly challenge forfeiture of the firearms in the context of this appeal because that forfeiture was the basis of the trial court's August 14 order denying defendant's motion for return of things seized. The state asserts that defendant could have appealed that order. Because defendant did not do so, the state contends, he could not properly ask the trial court to enter an amended judgment "for the purpose of artificially creating a right to appeal that previously was waived."
Alternatively, the state argues that the guns were not criminally forfeited, but were forfeited as contraband under ORS 166.279 in Gann's case. The state asserts that the trial court therefore correctly denied defendant's motion for return of the guns because defendant had no lawful right to possess them.
Finally, in response to defendant's second assignment of error, the state contends that any trial-court error in including the forfeiture as a probation condition is harmless because any ruling by this court in defendant's favor would "have no effect on the court's forfeiture in Gann's case" and defendant's argument is, therefore, moot.[3]
In reply, defendant argues that the state never asserted below that the guns were subject to forfeiture as contraband under ORS 166.279, but consistently pursued criminal forfeiture in the trial court. Defendant also asserts that he can challenge criminal forfeiture of the guns in this appeal because the August 14 order is an intermediate order captured by the May 2016 amended judgment. Finally, defendant contends that this appeal is not moot.
III. ANALYSIS
We begin by evaluating whether defendant's challenge to the forfeiture is properly before us. To do that, we *55 must consider four preliminary questions: (1) what type of forfeiture occurred; (2) the scope of the court's August 14 order denying defendant's motion for return of the seized firearms; (3) whether defendant could have appealed that order; and (4) if so, the consequences of his failure to appeal the order. The first question is whether the trial court ruled on criminal forfeiture of the guns under ORS 131.550 to ORS 131.600 or, as the state suggests, ruled that they were contraband under ORS 166.279. In that respect, the charging instrument is significant. As noted, the indictment included a criminal-forfeiture count, labeled Count 13, in which the state sought criminal forfeiture of $1194 as proceeds of one or more of the other crimes charged. The court dismissed that count as it applied to defendant. At defendant's sentencing, the state asserted that it would seek "forfeiture of all firearms" in Gann's case. Then, at Gann's sentencing, the state asked the court "to allow the forfeiture on Count Thirteen, which is for the money * * * as well as the guns seized at the residence." Despite the fact that Count 13 of the indictment did not identify firearms as included in the property to be seized, the court ruled orally that it would "forfeit both the cash and the firearms," as the state had requested.
Thus, the state expressly referred to the criminal-forfeiture count in the indictment when asserting that the guns should be forfeited in Gann's case. At least as significantly, the state did not assert that the guns could be forfeited as contraband, in addition *158 to or instead of being criminally forfeited. And it was immediately after the state referred to the criminal-forfeiture count that the court turned to the issue of forfeiture in defendant's case. Defendant understood that the state was seeking criminal forfeiture in his case, too, and argued that the required procedures had not been followed. The state did not challenge defendant's characterization of what the state sought to accomplish, and the court ordered forfeiture of the guns based on its assessment of defendant's wrongful conduct in providing Gann access to the guns.
Given that sequence of events-in which the only basis for forfeiture that anybody referenced was criminal forfeiture-we reject the state's argument that the guns *56 actually were forfeited as contraband under a statute entirely distinct from Oregon's criminal-forfeiture provisions. Rather, the trial court orally ordered criminal forfeiture of the guns in defendant's case, as well as Gann's.
We turn to the second preliminary question before us: What is the scope of the trial court's August 14 order? On its face, that order accomplishes one thing: It denies defendant's motion for return of the seized firearms. Defendant filed that motion pursuant to ORS chapter 133 provisions that govern disposition of certain seized property. Specifically, under ORS 133.633, a person from whom property has been seized, or any other person who asserts "a claim to rightful possession of the things seized," may move "the appropriate court" to return or restore the property to the person's possession. The motion can be filed independently from a criminal case. See generally Filipetti v. Dept. of Fish and Wildlife , 224 Or. App. 122, 124, 197 P.3d 535 (2008) (illustrating application of statutes in absence of a criminal proceeding). The question facing the court is who is entitled to possession of the property. ORS 133.663 (1)(b)(A), (3). If the court rules in a claimant's favor, the result is entry of "an order for the return or restoration of the things seized." ORS 133.663(1)(b)(B). Thus, by denying defendant's motion for return of the firearms, the trial court ruled that defendant had not established a right to current possession of the firearms.
The question remains whether the August 14 order should be understood to also memorialize the trial court's decision regarding criminal forfeiture of the guns. Although the record is not entirely clear, we conclude for the following reasons that the order should not be understood as reflecting criminal forfeiture of the weapons. First, the order is straightforward and, on its face, does nothing more than deny defendant's motion for return of the weapons. Second, we are not inclined to assume that a court would intend its ruling on a motion filed under ORS 133.633 to silently encompass an entirely separate matter of criminal significance, that is, the criminal forfeiture of property under ORS 131.550 to 131.600. Third, as noted, a motion for return of things seized is, or at least can be, filed independently of a criminal case. Accordingly, we conclude that the August *57 14 order reflected the trial court's determination that defendant was not then entitled to return of the firearms but did not memorialize the court's oral ruling granting the state's motion for criminal forfeiture of those guns.
The third preliminary question before us is whether the August 14 order was appealable. Both statutes and previous decisions of this court inform our answer. Under ORS 133.653(2), a trial court's order denying an ORS 133.633 motion for return of seized property is "reviewable on appeal" when the court certifies that the property is no longer needed for evidentiary purposes. We have suggested in some cases, without elaboration, that ORS 133.653(2) may itself create a right to appeal. See City of Lebanon v. Milburn , 286 Or. App. 212, 213, 398 P.3d 486 (2017) (parenthetically describing ORS 133.653(2) as "providing for appeal of an order to return things seized"); State v. Richey , 54 Or. App. 175, 178, 634 P.2d 487 (1981) (stating that such an order "could be appealable under ORS 133.653(2)"). An argument can be made, however, that ORS 133.653(2) describes only reviewability of an ORS 133.633 order and that the order is appealable under *159 ORS 19.205(5) as an order in a special statutory proceeding.[4]
We need not resolve here whether ORS 133.653(2) actually creates a right to appeal. One way or the other, the August 14 order denying defendant's motion for return of property was appealable-either under ORS 133.653(2) directly or under ORS 19.205(5) as an appealable order in a special statutory proceeding.
*58 The fourth (and final) preliminary question is what effect defendant's failure to appeal the August 14 order has on the present appeal. As a general principle, a trial court cannot amend a judgment-or enter a new judgment-to revive a party's right to appeal, when the party has lost that right by not timely appealing an earlier judgment or appealable order that embodies the ruling that the party wishes to challenge. See, e.g. , State v. Ainsworth , 346 Or. 524, 533, 213 P.3d 1225 (2009) ("a trial court has no inherent authority to vacate a properly entered judgment and then reinstate the identical judgment, when the sole purpose for doing so is to extend the statutorily fixed time to appeal for a party who failed to * * * determine that judgment had been entered").[5] If a court does so, this court will dismiss any appeal from that improperly entered judgment. See id . at 526, 213 P.3d 1225. Moreover, a party's failure to appeal an appealable order or judgment that embodies a particular ruling prevents the party from challenging that ruling on appeal from a subsequently entered judgment, if the judgment does nothing more than maintain the status quo by repeating that same ruling. Cf. Young v. Peterson , 304 Or. 421, 423, 746 P.2d 217 (1987) (where a party did not timely appeal a judgment, and the trial court's subsequent amendment of the judgment does not affect the parties' rights, an appeal from the amended judgment should be dismissed); State ex rel. Juv. Dept. v. Vockrodt , 147 Or. App. 4, 7-8, 934 P.2d 620 (1997) (an order that simply continues the status quo is not appealable because it does not affect a party's rights).
Thus, defendant's failure to appeal the August 14 order denying his ORS 133.633 motion for return of things seized means that he could not challenge that order on appeal from the later-entered amended judgment. And, if the August 14 order had reflected the trial court's criminal forfeiture of the firearms, then the trial court would not have had authority to enter the amended judgment to *59 again memorialize that forfeiture requirement. But, as we have explained, the August 14 order did not memorialize the court's requirement that the weapons be criminally forfeited. That requirement was memorialized for the first time in the May 2016 amended judgment. Accordingly, defendant's failure to appeal the August 14 order did not prevent the trial court from later entering the amended judgment to add the forfeiture requirement, and it does not preclude us from addressing defendant's challenge to the forfeiture.
We turn to the merits. As noted, the state does not contend that the trial court *160 had authority to order criminal forfeiture of the guns in defendant's case, either generally or as a special condition of probation (as the amended judgment reflects). And the state could not persuasively argue that criminal forfeiture was proper in this case. Defendant is correct that the trial court lacked authority to order criminal forfeiture of the weapons when fundamental statutory requirements for criminal forfeiture had not been met. We need not detail each of those requirements here; it is sufficient for purposes of this appeal to observe that, among other things, the state did not give required notice that the guns would be subject to criminal forfeiture, ORS 131.570, did not include criminal forfeiture of the guns as an allegation in the indictment, ORS 131.582(1), and did not endeavor to prove "beyond a reasonable doubt that the property for which forfeiture [was] sought [was] an instrumentality or the proceeds of the crime of conviction or past prohibited conduct that is similar to the crime of conviction," ORS 131.582(6). Defendant also is correct that-even if the criminal forfeiture were otherwise appropriate-the court could not properly make that forfeiture a special condition of his probation. State v. Miller , 262 Or. App. 537, 540, 325 P.3d 787 (2014).
Finally, we reject the state's argument that defendant's challenge to the forfeiture condition is moot, which is premised on the state's contention that defendant cannot, as a practical matter, regain possession of the firearms because they have been forfeited in Gann's case. Given the complicated procedural history of this criminal proceeding, we are not inclined to determine on this record that defendant cannot-as a matter of law-be entitled to return of *60 the firearms under any circumstances. We express no opinion on that matter.
IV. CONCLUSION
We began this opinion by describing its procedural history as "idiosyncratic"; we recognize that our opinion could be similarly labeled. Nonetheless, our conclusions necessarily follow from the manner in which events unfolded below. To be clear, we conclude as follows.
First, defendant could have appealed the August 14 order denying his ORS 133.633 motion for return of things seized. Defendant's failure to take that appeal means that the trial court's order denying his motion for immediate return of the firearms is final. Second, the state moved for, and the trial court granted, criminal forfeiture of defendant's firearms, and it did so in defendant's case. Third, the trial court's criminal-forfeiture ruling with respect to defendant was not reflected in any appealable judgment or order until the court entered the May 2016 amended judgment from which defendant filed his amended notice of appeal. Finally, as to the merits, the court lacked authority to order criminal forfeiture of the firearms in defendant's case.
Portion of judgment ordering forfeiture of the firearms reversed; otherwise affirmed.

Counts 1 and 2 originally were charged as solicitation and conspiracy to commit second-degree assault; the convictions are for the lesser-included offenses of solicitation and conspiracy to commit fourth-degree assault.

ORS 133.633(1)(a) sets out a process by which an individual "from whose person, property or premises things have been seized" to move "the appropriate court to return" the things to the person or premises from which they were taken. Subsection (b) of the statute sets out a similar process for restoration of seized things to people who assert "a claim to rightful possession of the things." Related statutes explain permissible bases for such motions, ORS 133.643, and associated procedural requirements and standards governing judicial review of the motions, ORS 133.653 ; ORS 133.663.

The state also makes a lack-of-preservation argument that we reject without discussion.

ORS 19.205(5) provides:
"An appeal may be taken from the circuit court in any special statutory proceeding under the same conditions, in the same manner and with like effect from a judgment or order entered in an action[ ]unless appeal is expressly prohibited by the law authorizing the special statutory proceeding."
A proceeding is a "special statutory proceeding" only if, among other things, it is separate from a criminal proceeding "in some sense." State v. Branstetter , 332 Or. 389, 396-97, 29 P.3d 1121 (2001). That requirement is met here, as a motion for return of seized property need not be filed as part of a pending criminal action. Cf. ORS 133.633(2) (describing appropriate court to consider the motion). Indeed, the Supreme Court has held, in a different context, that an order forfeiting property (in that case, animals impounded during an animal-neglect investigation) was appealable under ORS 19.205 where the pertinent statute did not reflect a legislative intention that the forfeiture be a part of the underlying criminal action. Branstetter , 332 Or. at 402-03, 29 P.3d 1121.

An exception to that general rule exists when the circuit court mistakenly entered the original judgment or appealable order. In those circumstances, the court may enter a new judgment as part of "cur[ing] a prejudgment procedural irregularity"-such as premature entry of judgment that deprived a party an opportunity to be heard-"rather than solely to extend the time for appeal for a party who failed to timely appeal the original judgment." Ainsworth , 346 Or. at 540, 213 P.3d 1225. That exception does not apply here.