178 September 4, 2025 No. 788

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Travis William MOODENBAUGH,
*Plaintiff-Appellant,*

*v.*

OREGON STATE POLICE,
a law enforcement agency of the State of Oregon;
Greg M. Baxter; Sharon Garritson; and Chris Hawkins,
*Defendants-Respondents.*

Union County Circuit Court
20CV19035; A180464

Thomas B. Powers, Judge.

Argued and submitted February 8, 2024.

Brent H. Smith argued the cause and filed the briefs for appellant.

Robert M. Wilsey, Assistant Attorney General, argued the cause for respondents. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, Egan, Judge, and DeVore, Senior Judge.

EGAN, J.

Reversed and remanded.

**EGAN, J.**

In this civil case, plaintiff sued the Oregon State Police (OSP) and three individual government employees, defendants Baxter, Garritson, and Hawkins (collectively, "the individual defendants"). He asserted two claims, each arising from the state's seizure of an elk head, which it failed to return after the dismissal of its criminal hunting charges against plaintiff. In plaintiff's first claim, brought solely against OSP, he alleged conversion and sought economic damages. In his second claim, brought solely against the individual defendants, he alleged a 42 USC section 1983 claim—specifically that the individual defendants had unconstitutionally "deprived [p]laintiff of his property without due process of law"—and sought economic, non-economic, and nominal damages.

Prior to trial, plaintiff moved *in limine* to exclude as irrelevant any evidence showing that he and his son had unlawfully hunted the elk. In essence, he argued (1) that such evidence was relevant only to whether he had a lawful possessory interest in the elk head (because a person cannot lawfully possess the parts of illegally obtained wildlife) and (2) that that issue had already been resolved in his favor by an earlier order issued by the criminal court, which required OSP to return the elk head to plaintiff. The trial court denied plaintiff's motion *in limine*, and after a bench trial, it denied both of plaintiff's claims for failure to prove a lawful possessory interest in the elk head.

On appeal, plaintiff assigns error to the denial of his motion *in limine* and the denial of his claims. We conclude that both assignments of error can be resolved on the same grounds—namely, we hold that the trial court erred in failing to give preclusive effect to the criminal court's order. Accordingly, we reverse and remand.

## I. BACKGROUND

The facts relevant to our decision are undisputed and largely procedural. While bowhunting in 2016, plaintiff and his son killed a bull elk. A few months later, pursuant to a warrant, OSP seized the elk head from plaintiff and his son. Afterward, the state charged defendant (but not

his son) with wildlife crimes, at least some of which related to the elk head. However, all of those charges were eventually dismissed with prejudice. After the dismissal, plaintiff asked the state to return the elk head to him. Defendant Baxter, a Union County deputy district attorney, refused and instead purported to order it forfeit to OSP.

In March 2019, plaintiff moved the criminal court for an order requiring the state and OSP to return the elk head to him. At a contested hearing on that motion, plaintiff argued that the state was unlawfully withholding the elk head because plaintiff had not been convicted of a crime and the state had not pursued criminal or civil forfeiture proceedings. The state argued that plaintiff was not entitled to the return of the elk head because plaintiff and his son had killed the elk unlawfully, which meant that they could not lawfully possess the elk head.[1]

To prove its assertion that plaintiff had hunted the elk unlawfully, the state called a witness to testify that the elk was killed without "a lawful tag." Plaintiff objected to that testimony, arguing that "we win that issue on *res judicata*" because the criminal charges had been dismissed with prejudice. The criminal court sustained plaintiff's objection and later endorsed plaintiff's view of the law, ordering the state to return the elk head to plaintiff:

"[CRIMINAL COURT:] *** I would grant the motion [to order the return of the elk head], because *** whether there was unlawful activity here that would justify the forfeiture and destruction of the evidence, whether the activity was unlawful, okay, has already been resolved, the case was dismissed with prejudice.

"So the—the idea of *res judicata* is that *** judgments in a case, need to be binding and they need to be able to be relied upon and counted upon by the parties and they resolve issues and so the issue of whether it was taken unlawfully or not was.

---

[1] OAR 635-065-0765(9) provides:

"No person shall possess any game mammal or part thereof which has been illegally killed, found or killed for humane reasons, except lawfully obtained shed antlers, unless he has notified and received permission from the Department or personnel of the Oregon State Police prior to transporting."

"The state had the burden of proof. The case was dismissed; there was no unlawful taking. It's *** really that simple. And because there was no unlawful taking, [ORS] 498.002[2] does not provide the basis for the state holding onto the evidence, seizing the evidence, forfeiting, or destroying it.

" * * * * *

"*** What permits existed or didn't exist, what tags existed or didn't exist, the bottom line is that for the issue of whether the conduct of [plaintiff] was unlawful *** has been resolved in [plaintiff's] favor by the dismissal of the case and entry of judgment dismissing it with prejudice ***.

"So the only answer to the question of whether the taking was unlawful is, no, it wasn't. And because it was not unlawful and the—the evidence was not otherwise illegal as contraband would be, or illegal substances would be, [ORS] 498.002, the state's legal basis for claiming it, simply does not apply."

The criminal court entered an order memorializing that ruling, and the state did not appeal that ruling. *See* ORS 133.653(2) ("An order granting a motion for return or restoration of things seized shall be reviewable on appeal in regular course."); *State v. Fenton*, 294 Or App 48, 57, 430 P3d 152 (2018) (suggesting that either ORS 133.653(2) or ORS 19.205(5) creates the right to appeal an order on a motion to return property).

Defendant OSP failed to return the elk head to plaintiff, and plaintiff filed the complaint in this case. Plaintiff alleged conversion against defendant OSP and a deprivation of civil rights (*i.e.*, a section 1983 claim) against the individual defendants.

As stated above, plaintiff moved *in limine* to "exclude evidence of the *** Elk Head coming into Plaintiff's and his son's possession by unlawful means," arguing that such evidence was irrelevant to whether OSP converted the elk

---

[2] ORS 498.002 provides in relevant part, "Wildlife is the property of the state. No person shall angle for, take, hunt, trap or possess, or assist another in angling for, taking, hunting, trapping or possessing any wildlife in violation of the wildlife laws or of any rule promulgated pursuant thereto."

head, to whether the individual defendants had violated his civil rights, or to damages on either claim. He argued, among other things, that "[t]he issue of whether Plaintiff obtained the *** Elk Head unlawfully ha[d] been resolved in Plaintiff's favor," and the criminal court had ordered OSP to return the elk head to plaintiff.

Meanwhile, defendants objected to the motion, arguing that, under *Filipetti v. Dept. of Fish and Wildlife*, 224 Or App 122, 197 P3d 535 (2008), plaintiff had the "burden of proving that [he had] the right to possess" the elk head and that the lawful possession of wildlife parts in the context of this case requires that the wildlife was legally hunted. In defendants' view, "the elk head was in this sort of legal limbo at the time where the state had the authority to keep it and the plaintiff was in the position of having to demonstrate his right to it by proving that he legally possessed it[.]"

Ultimately, the trial court denied the motion *in limine*, declining to give preclusive effect to the criminal court's earlier order because the trial court believed that the criminal court had failed to properly consider the import of our holding in *Filipetti*. Therefore, the trial court allowed defendants to relitigate the issue of whether plaintiff unlawfully hunted the elk insofar as that issue was relevant to plaintiff's ownership interest in the elk:

> "[THE COURT:] And, you know, I understand that [the criminal court's] decision differs from [*Filipetti*], but neither party raised the *Filipetti* case in that hearing. So, you know, judges are only as good in our rulings as the cases that are presented to us for consideration and so I'm not faulting [the criminal court] for not referring to the *Filipetti* decision. I wouldn't have referred to it either if it hadn't been raised.
>
> "I'm just saying I think that, that was an important point that was left out of that hearing and I don't think that it can be left out of our case, because I believe that both the conversion claim and the civil rights claim are dependent on, you know, in the language of the complaint on proof that Plaintiff was in legal possession, for purposes of conversion certainly, of the bull elk head.

"And I'm just turning to the complaint here. You know, one of the allegations in the amended complaint \*\*\* is Plaintiff and his son have an ownership interest in the 7-by-6 bull elk head. And I think that, that fact has to be proved along with the rest of Plaintiff's case in order for Plaintiff to recover.

"So that's where I am on the motion *in limine* \*\*\*. So I would say that I am denying it in part.

"To the degree that evidence of the possession by unlawful means is relevant to the plaintiff's burden to show his legal possession of the elk head as an element of the two claims, to that extent I think that, that evidence comes in."

Plaintiff appeals that ruling and the eventual denial of his claims, which was based on plaintiff's failure to prove a lawful possessory interest in the elk head.

## II.  ANALYSIS

At the heart of both of plaintiff's assignments of error is a question of issue preclusion. If the trial court erred in failing to give preclusive effect to the criminal court's order, then it erred both in denying plaintiff's motion *in limine* and in denying his two claims. We review the trial court's issue-preclusion ruling for legal error. *Berg v. Benton*, 297 Or App 323, 327, 443 P3d 714 (2019).

As we recently explained in *Worley v. Lewis*, 338 Or App 344, 348, 567 P3d 468 (2025), "[i]ssue preclusion arises in a subsequent proceeding when an issue of ultimate fact—or an issue of law—has been determined by a valid and final determination in a prior proceeding." (Internal quotation marks omitted.) "The doctrine promotes finality and judicial economy by preventing parties from relitigating issues that were fully addressed in a prior proceeding." *Id*. Five requirements must be met for issue preclusion to apply:

"(1)   [T]he issue in the two proceedings must be identical;

"(2)   [T]he issue must have been actually litigated and essential to a final decision on the merits in the prior proceeding;

"(3)   [T]he party sought to be precluded must have had a full and fair opportunity to be heard on that issue;

"(4)    [T]he party sought to be precluded must have been a party to the prior proceeding; and

"(5)    T]he prior proceeding must have been the type of proceeding to which courts give preclusive effect."

*Id*. "'Even where those elements are met, the court must also consider the fairness under all the circumstances of precluding a party.'" *City of Portland v. Huffman*, 264 Or App 312, 316, 331 P3d 1105 (2014) (quoting *Minihan v. Stiglich*, 258 Or App 839, 855, 311 P3d 922 (2013) (internal quotation marks omitted)).

We acknowledge from the outset that the parties have never been very clear or precise in their arguments about issue preclusion or its requirements (although that legal principle has always lay at the heart of the parties' dispute). Similarly, in refusing the give the criminal court's order preclusive effect, the trial court did not address the five requirements listed above or explicitly speak in terms of the "fairness" of giving the criminal court's order preclusive effect. But, as a practical matter, the trial court appears to have assumed without deciding that the five requirements of issue preclusion were met and then turned to the secondary question of whether it was fair to give the criminal court's order preclusive effect. On that secondary question, the trial court explained that it would not give the criminal court's order preclusive effect because that order failed to account for the holding in *Filipetti*. Accordingly, we evaluate the trial court's ruling by first addressing what is essentially a fairness rationale for denying preclusive effect and then proceeding to determine whether an evaluation of the five requirements listed above yields any alternative bases for affirmance.

A.  *The Fairness of Giving the Criminal Court's Order Preclusive Effect*

The Supreme Court has observed that manifest errors in a judgment may be a reason not to give that judgment preclusive effect. *State Farm v. Century Home*, 275 Or 97, 108, 550 P2d 1185 (1976). It appears that the trial court relied on that rationale in denying the criminal court's order preclusive effect because—in the trial court's eyes—it failed

to properly apply *Filipetti*. However, by comparing the holding in *Filipetti* to the criminal court's ruling, we conclude that the criminal court *did* properly apply *Filipetti* (or at least its essential holding). Therefore, the trial court was wrong to conclude that the criminal court's order was erroneous and deny it preclusive effect on that basis.

In *Filipetti*, the Oregon Department of Fish and Wildlife (ODFW) appealed a trial court's order directing ODFW to return a live deer to the plaintiffs. 224 Or App at 124. The deer had been seized pursuant to a search warrant, but criminal charges were never pursued, and the trial court eventually ordered ODFW to return the live deer to plaintiffs. *Id.* at 124-25.

On appeal, ODFW argued that the order to return the deer was erroneous because the plaintiffs had failed to establish a "valid claim to rightful possession." *Id.* at 124. Specifically, ODFW argued that a person can only recover property that they can lawfully possess, that lawful possession of a living deer requires a license or permit, and that the plaintiffs lacked such a license or permit. *Id.* Importantly, the parties stipulated that the plaintiffs lacked the necessary license or permit. *Id.*

We held that ODFW was correct—a party seeking to compel the return or restoration of seized property must establish, among other things, that "the person is 'entitled' to the return or restoration of—that is, can lawfully possess—the item sought to be recovered." *Id.* at 132. Consequently, because the plaintiffs could not lawfully possess the live deer, it was error to order ODFW to return it to them.

Just as in *Filipetti*, plaintiff moved the criminal court for the return of seized property. At the contested hearing on that motion, the state made the very same argument made by ODFW in *Filipetti*—that is, that plaintiff was not entitled to the possession of the seized property because it would be illegal for him to possess it. There was a key distinction from *Filipetti*, however. In *Filipetti*, there was no dispute that the plaintiffs lacked the necessary license to possess a live deer. But with regard to the elk head at issue, it is perfectly lawful for a hunter to possess the parts

of wildlife that they have lawfully hunted. Therefore, the presumptions applicable to *Filipetti* and plaintiff's case were in an inverse position. In *Filipetti*, possession of a live deer is *unlawful* unless there was proof of a license. Whereas, in the context of plaintiff's case, possession of the elk head was *lawful* unless there was proof that the elk was hunted unlawfully. *See* OEC 311(1)(x) (listing as a rebuttable evidentiary presumption that "[t]he law has been obeyed"). The state presented evidence that plaintiff and his son unlawfully hunted the elk, but the criminal court excluded that evidence because it ruled that the dismissal of the criminal case against defendant foreclosed the ability for the state to establish that plaintiff unlawfully hunted the elk. Consequently, the criminal court found that plaintiff could lawfully possess the elk head and ordered its return.

We conclude that the criminal court correctly applied the essential holding of *Filipetti*—though admittedly it never mentioned the case. It understood that, if plaintiff had unlawfully hunted the elk, then plaintiff could not lawfully possess it under OAR 635-065-0765(9). But the criminal court concluded that plaintiff was presumed innocent of any unlawful hunting activities and that the state had failed to prove otherwise given the dismissal of the criminal case against plaintiff. Based on that analysis, the court concluded that plaintiff could lawfully possess the elk head. There may be room to dispute whether the criminal court was correct in ruling that the dismissal of the criminal case foreclosed the state from proving that plaintiff unlawfully hunted the elk. But, even if that was an erroneous decision (something we express no opinion on), that decision was not a misapplication of *Filipetti*'s holding—it was something else entirely. Moreover, the state chose not to appeal that ruling.

Because the criminal court did not misapply *Filipetti* as the trial court in the case at hand believed, the trial court necessarily erred in concluding that it would be unfair to give the criminal court's order preclusive effect due to the misapplication of *Filipetti*. Instead, principles of fairness flowed in the opposite direction. By allowing defendants the chance to relitigate whether plaintiff could lawfully possess the elk head, the trial court gave defendants a second bite

at the apple, allowing them to renew the same arguments the state had made and lost in the criminal case. Fairness, therefore, weighs in favor of applying the principles of issue preclusion.

B.    *The Five Requirements of Issue Preclusion*

Having determined that the basis of the trial court's ruling was erroneous, we turn back to the five requirements of issue preclusion to determine whether they may provide an alternative basis for affirmance. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659, 20 P3d 180 (2001) (explaining that we can affirm on an alternative basis in appropriate circumstances). To affirm on an alternative basis three things must be true:

> "(1) *** the facts of record be sufficient to support the alternative basis for affirmance; (2) *** the trial court's ruling be consistent with the view of the evidence under the alternative basis for affirmance; and (3) *** the record materially be the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below."

*Id.* at 659-60. Although we will briefly address each of the five requirements, we note that defendants argue only that the second requirement—that the issue was "actually litigated"—provides an alternative basis for affirmance. Therefore, that requirement is where we focus most of our analysis.

First, to give preclusive effect to an earlier order, the issue in the two proceedings must be "identical," not just "similar." *Patton v. Mutual of Enumclaw Ins. Co.*, 296 Or App 266, 274, 438 P3d 441, *rev den*, 365 Or 533, *rev den*, 365 Or 657 (2019). Here, the issue presented in the criminal hearing and in this case were identical. The issue was whether plaintiff had a lawful possessory interest in the elk head, despite the state's allegations that he unlawfully hunted the elk.

Second, and the only requirement that defendants dispute, the issue must have been actually litigated in the prior proceeding. "An issue is 'actually litigated' when 'the factual and legal issues that the plaintiff raises in the second case were *actually* adjudicated and essential to the

determination of the first case.'" *Thomas v. U. S. Bank National Association*, 244 Or App 457, 472, 260 P3d 711, *rev den*, 351 Or 401 (2011) (quoting *Ram Technical Services, Inc. v. Koresko*, 240 Or App 620, 632, 247 P3d 1251 (2011) (emphasis in *Ram Technical Services, Inc.*)).

Despite the defendants' claim to the contrary, the issue in question was "actually litigated" before the criminal court. Defendants argue that the issue was not "actually litigated" because the criminal court excluded and thus did not evaluate whether the state's evidence persuasively established that plaintiff violated wildlife laws in taking the elk. But defendants misframe the issue. That the criminal court rejected the state's efforts to prove as a factual matter that plaintiff had violated wildlife laws in taking the elk is not determinative. The entire focus of the contested hearing was whether plaintiff was *lawfully allowed* to possess the elk head such that OSP was required to return it. The state's sole argument against that return was that plaintiff could not possess the elk head because he had taken it unlawfully. As explained above, the criminal court did not disagree with the state's legal proposition; rather, it concluded that the state had simply failed to establish any wrongdoing on plaintiff's part because its criminal charges had been dismissed with prejudice. As a consequence, the criminal court concluded that plaintiff had a *lawful possessory interest* in the elk head and ordered OSP to return it to him. Thus, whether plaintiff had a lawful possessory interest in the elk head was actually litigated and resolved in plaintiff's favor.

Third, the party sought to be precluded must have had a full and fair opportunity to be heard on that issue. That requirement was satisfied. The state was allowed to make its legal argument and call its witness. Aside from sustaining plaintiff's objection to allegations of unlawful hunting, the trial court did not foreclose the state from presenting its evidence or arguments.

Fourth, "[f]or * * * issue preclusion to apply, the person against whom preclusion is asserted must have been a party or in privity with a party to the earlier proceeding." *D'Amico v. Ellinwood*, 209 Or App 713, 717-18, 149 P3d 277

(2006), *rev den*, 342 Or 473 (2007). "Privity includes those who control an action although not parties to it; those whose interests are represented by a party to the action; and successors in interest to those having derivative claims." *Id.* (internal quotation marks omitted).

With regard to OSP, as the possessor of the elk head at the time of the hearing before the criminal court and as an agency of the state itself, its possessory interest in the elk head as against plaintiff was represented by the state at that hearing, and defendants do not suggest otherwise. Thus, the record appears sufficient to establish that OSP was in privity with the state.

The issue of privity is not as straight-forward with regards to the individual defendants. As a factual matter, it is unclear whether and to what degree they controlled the action or had their interests represented by that state. However, given that the parties did not dispute privity below and that the record may have developed differently if they had, the potential lack of privity does not provide an alternative basis for affirmance.[3]

Finally, the prior proceeding must have been the type of proceeding to which courts give preclusive effect. Here, a contested hearing in a criminal case is certainly the type of proceeding that we give preclusive effect to.

In short, after evaluating the five requirements of issue preclusion above, we find no alternative basis on which we can affirm the trial court's ruling.

Finally, we note that the error was not harmless. In rendering its verdict, the trial court explicitly denied both of plaintiff's claims based on his failure to prove a lawful possessory interest in the elk head. Therefore, we reverse and remand.[4]

---

[3] We note that because the trial court never reached the question of privity, nothing prevents the parties and the trial court from revisiting the issue of privity on remand.

[4] Because our finding of error as to issue preclusion requires reversal and remand, we need not address the remainder of plaintiff's arguments. However, because the issue could arise again on remand, we note that the trial court may have misunderstood the relevance of plaintiff's ownership interest in the elk head to his section 1983 claim.

Reversed and remanded.

---

In a section 1983 claim, "'[plaintiffs] must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law.'" *Meyer v. Oregon Lottery*, 292 Or App 647, 653, 426 P3d 89 (2018) (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 US 40, 49-50, 119 S Ct 977, 143 L Ed 2d 130 (1999) (brackets in *Meyer*)). Where a plaintiff specifically alleges the deprivation of procedural due process, such a claim "consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." *Reed v. Goertz*, 598 US 230, 236, 143 S Ct 955, 961, 215 L Ed 2d 218 (2023). Accordingly, a plaintiff need not *necessarily* prove a lawful ownership or possessory interest in property to prevail on their claim. Instead, they need prove only the existence of a constitutionally protected property interest that they were deprived of without due process. *Wolfenbarger v. Williams*, 774 F2d 358, 362 (10th Cir 1985). Where there is a constitutionally protected privacy interest but not a lawful ownership interest, the lack of a lawful ownership interest may be relevant to economic damages. *See id.*